# CORY, CONTROLLER OF CALIFORNIA, ET AL. v. WHITE, ATTORNEY GENERAL OF TEXAS, ET AL.

No. 80-1556.   Argued January 18, 1982—Decided June 14, 1982

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BLACKMUN, REHNQUIST, and O'CONNOR, JJ., joined. BRENNAN, J., filed an opinion concurring in the judgment, *post*, p. 91. POWELL, J., filed a dissenting opinion, in which MARSHALL and STEVENS, JJ., joined, *post*, p. 92.

*Jerome B. Falk, Jr.*, argued the cause for petitioners. With him on the briefs were *Martin R. Glick, Steven L. Mayer, Paul J. Van Osselaer*, and *Myron Siedorf*.

*O. Clayton Lilienstern* argued the cause for respondents Lummis et al.   With him on the brief were *Patricia A. Stevenson, R. James George, Jr., John M. Harmon*, and *James William Moore*.   *Rick Harrison* argued the cause

for respondents White et al. With him on the brief were *Mark White*, Attorney General of Texas, *pro se*, *Gilbert J. Bernal, Jr.*, Assistant Attorney General, and *David Deaderick*.

JUSTICE WHITE delivered the opinion of the Court.

In this case, both Texas and California assert the right to levy state death taxes on the estate of Howard Hughes. The laws of each State impose an inheritance tax on the real and tangible personal property located within its borders, and upon the intangible personalty, wherever situated, of a person domiciled in the State at the time of death. Under the laws of Texas and California, an individual has but one domicile at any time. Taxing officials in each State assert that Howard Hughes was domiciled in their State at the time of his death. The issue before us is whether the Federal Interpleader Act, 28 U. S. C. § 1335, provides a jurisdictional basis for resolution of inconsistent death tax claims by the officials of two States.

I

This case is the sequel to *California* v. *Texas*, 437 U. S. 601 (1978). There, California petitioned for leave to file a complaint against Texas under this Court's original jurisdiction. At that time, we denied the motion. In concurring opinions, however, four Justices suggested that a determination of Hughes' domicile might be obtained in federal district court pursuant to the Federal Interpleader Act, 28 U. S. C. § 1335.[1]

---

[1] The Federal Interpleader Act, 28 U. S. C. § 1335, provides:

"(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

Three weeks after the decision in *California* v. *Texas*, the administrator of the estate filed a statutory interpleader action in the United States District Court for the Western District of Texas. Asserting that the officials of the two States were seeking to tax the estate on the basis of inconsistent claims that each of their respective States was Howard Hughes' domicile at death, it requested the District Court to adjudicate the issue of domicile. The District Court entered a temporary restraining order prohibiting the California and Texas taxing officials from pursuing domicile-based inheritance tax claims in any other forum, including their own state courts.

The District Court then dismissed for lack of subject-matter jurisdiction for failure to satisfy the requirement of § 1335 that there be diversity of citizenship between at least two adverse claimants. It found that the administrator was not a claimant. Among the claimants, it held that the County Treasurer for Los Angeles County was a citizen of California for diversity purposes, citing *Moor* v. *County of Alameda*, 411 U. S. 693 (1973). The court ruled, however, that the State of Texas, rather than its taxing officials, was the opposing claimant and that because a State is not a citizen of itself for diversity purposes, *Postal Telegraph Cable Co.* v.

---

"(1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

"(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another."

*Alabama,* 155 U. S. 482 (1894), the action did not involve two or more adverse claimants of diverse citizenship as required by the statute.

The Court of Appeals for the Fifth Circuit reversed the order of dismissal. *Lummis* v. *White,* 629 F. 2d 397 (1980). In addition to the County Treasurer, it found the administrator of the estate, a citizen of Nevada, to be a claimant for the purposes of statutory interpleader. It recognized that *Treinies* v. *Sunshine Mining Co.,* 308 U. S. 66 (1939), held that a citizenship of a disinterested stakeholder could not be considered in determining interpleader jurisdiction. Reasoning, however, that here the administrator's legal duty of preserving the estate's assets from the double death tax liability and his assertion that Hughes was domiciled in Nevada, which has no state death tax, made the administrator an interested stakeholder, the court further held that the citizenship of an interested stakeholder may be considered for purposes of establishing diversity under § 1335. The requisite diversity—between the administrator and the County Treasurer of Los Angeles County—was therefore present.

The Court of Appeals went on to reject the States' claim that although the suit was nominally against state officials, it was in effect a suit against two sovereign States barred by the Eleventh Amendment. Recognizing that *Worcester County Trust Co.* v. *Riley,* 302 U. S. 292 (1937), had squarely held that an interpleader action in all critical respects similar to this one was barred by the Eleventh Amendment, the Court of Appeals, relying on the concurring views of four Justices in *California* v. *Texas,* held that *Edelman* v. *Jordan,* 415 U. S. 651 (1974), had silently, but effectively, overruled *Worcester,* and that the Eleventh Amendment as interpreted in *Edelman* did not bar the interpleader action.

The California officials petitioned for certiorari and, at the same time, filed a new motion seeking leave to file a com-

plaint against Texas under this Court's original jurisdiction. Because of the troubling issues involving federal-court jurisdiction in such disputes, we granted certiorari. 452 U. S. 904.

## II

In *Worcester County Trust Co.* v. *Riley, supra,* the States of California and Massachusetts each claimed to be the domicile of a decedent and to have the right to assess death taxes on his entire intangible estate. A federal interpleader action followed, the estate naming as defendant the revenue officers of California and Massachusetts. This Court unanimously held that the case was in reality a suit against the States and that it was barred by the Eleventh Amendment. In arriving at this conclusion, the Court applied the accepted rules (1) that "a suit nominally against individuals, but restraining or otherwise affecting their action as state officers, may be in substance a suit against the state, which the Constitution forbids," 302 U. S., at 296, and (2) that "generally, suits to restrain action of state officials can, consistently with the constitutional prohibition, be prosecuted only when the action sought to be restrained is without the authority of state law or contravenes the statutes or Constitution of the United States." *Id.,* at 297. The Court held that there could be no credible claim of a violation of federal law since it was clear from prior cases that inconsistent determinations by the courts of two States as to the domicile of a taxpayer did not raise a substantial federal constitutional question. The Court also concluded that the claim that the officials were acting without authority under state law was insufficient. Hence, "[s]ince the proposed action is the performance of a duty imposed by the statute of the state upon state officials through whom alone a state can act, restraint of their action, which the bill of complaint prays, is restraint of state action, and the suit is in substance one against the State which the Eleventh Amendment forbids." *Id.,* at 299–300.

The Court of Appeals' opinion that *Edelman* v. *Jordan* had overruled *Worcester* rested on a passage in the *Edelman* opinion that it interpreted as limiting the bar of the Eleventh Amendment to suits "by private parties seeking to impose a liability which must be paid from public funds in the state treasury." 415 U. S., at 663. Because the interpleader plaintiff, the administrator of the estate, had sought only prospective relief, the appellate court held that the Eleventh Amendment did not bar his suit.

We are unpersuaded by this view of *Edelman*. That case involved a suit against state officials claiming that their administration of a particular federal-state program was contrary to federal regulations and the Constitution. Among other things, the plaintiffs sought a judgment for benefits that had not been paid them. The case was against individual officers who allegedly were violating federal law, and it therefore arguably fell outside the reach of the Eleventh Amendment under *Ex parte Young*, 209 U. S. 123 (1908). *Edelman* held, however, that the case was in effect a suit against the State itself because a judgment payable from state funds was demanded. It was correctly noted that *Ford Motor Co.* v. *Department of Treasury of Indiana*, 323 U. S. 459 (1945), was authority for this result.

*Edelman* did not hold, however, that the Eleventh Amendment never applies unless a judgment for money payable from the state treasury is sought.[2] It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought. The Eleventh Amendment reads: "The Judicial power of the United States shall not be construed to

---

[2] The dissent mischaracterizes *Edelman* as asserting that the Eleventh Amendment bars "only" suits seeking money damages. *Post*, at 96. *Edelman* recognized the rule "that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment," 415 U. S., at 663, but never asserted that such suits were the only ones so barred.

extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." Thus, the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction, a remedy available only from equity. To adopt the suggested rule, limiting the strictures of the Eleventh Amendment to a suit for a money judgment, would ignore the explicit language and contradict the very words of the Amendment itself. *Edelman* did not embrace, much less imply, any such proposition.

Neither did *Edelman* deal with a suit naming a state officer as defendant, but not alleging a violation of either federal or state law. Thus, there was no occasion in the opinion to cite or discuss the unanimous opinion in *Worcester* that the Eleventh Amendment bars suits against state officers unless they are alleged to be acting contrary to federal law or against the authority of state law. *Edelman* did not hold that suits against state officers who are not alleged to be acting against federal or state law are permissible under the Eleventh Amendment if only prospective relief is sought. Whether or not that would be the preferable rule, *Edelman* v. *Jordan* did not adopt it.

Furthermore, if that were to be the law, *Worcester* must in major part be overruled. We are unwilling, however, to overrule that decision and narrow the scope of the Eleventh Amendment to the extent that action would entail. We hold that the Eleventh Amendment bars the statutory interpleader sought in this case. The judgment of the Court of Appeals is

*Reversed.*

JUSTICE BRENNAN, concurring in the judgment.

In *California* v. *Texas*, 437 U. S. 601 (1978), I joined in the judgment of the Court denying California's motion for leave to file an original complaint. I was of the view that California's motion should be denied, "at least until such time as it is shown that . . . a statutory interpleader action cannot or will not be brought." *Id.*, at 602. I also stated that I was "not

so sure as" Justice Stewart and JUSTICE POWELL that *Texas v. Florida*, 306 U. S. 398 (1939), had been wrongly decided. 437 U. S., at 601. See *id.*, at 606 (Stewart, J., concurring); *id.*, at 615 (POWELL, J., concurring).

Substantially for the reasons set forth in the opinion of the Court, it is now clear to me that so long as *Worcester County Trust Co.* v. *Riley*, 302 U. S. 292 (1937), remains good law, an interpleader suit in the district court is not a practical solution to the problem of potential double taxation presented in cases such as these. As JUSTICE POWELL persuasively argues in Part III of his dissenting opinion, later cases, construing the Due Process Clause, have undermined *Worcester County*'s holding that the unfairness of double taxation on the basis of conflicting determinations of domicile does not rise to constitutional dimensions. And JUSTICE POWELL is surely correct in observing that "[t]he threat of multiple taxation based solely on domicile simply is incompatible with the structural principles of a federal system recognizing as 'fundamental' a constitutional right to travel." *Post*, at 101.

But if *Worcester County* is *not* to be overruled, and interpleader is not available to provide relief from the possibility of duplicative taxation of this estate, I think it appropriate under *Texas* v. *Florida*, *supra*, to exercise our original jurisdiction to decide the present controversy. I agree with Professor Chafee, quoted *post*, at 101, that "[s]omewhere within [the] federal system we should be able to find remedies for the frictions which that system creates." Where such a remedy exists—even if only in the narrow class of cases falling within the holding of *Texas* v. *Florida*—it should be employed. The exercise of the Court's original jurisdiction in circumstances such as this is both just and prudent, and very likely in accordance with the Framer's original intent.

JUSTICE POWELL, with whom JUSTICE MARSHALL and JUSTICE STEVENS join, dissenting.

The Court today decides two cases arising from the same set of facts, the instant case and *California* v. *Texas, post,*

p. 164. Both cases involve the efforts of officials of California and Texas to tax the intangible property of the late Howard Hughes. Each State asserts its right to tax the Hughes estate on the basis of Hughes' domicile. Yet both recognize that Hughes could have had only one domicile at the time of his death.

In order to avoid multiple taxation that all agree would be unfair, the administrator of the Hughes estate invoked the Federal Interpleader Act[1] as a means of litigating Hughes' domicile in one federal proceeding. The administrator alleged in his complaint, however, that Hughes was not a domiciliary of either California or Texas, but rather of the State of Nevada. App. 10.[2]

In the instant case, the Court holds today that this interpleader action is barred by the Eleventh Amendment. The Court does not dispute that multiple taxation based on domicile is unfair. Nor does it deny that the burden of multiple taxation ordinarily would fall, not on one of the claiming States, but solely on the heirs to an estate. But the Court opinion does not address these issues directly. Rigidly applying an aged and indefensible precedent, the Court denies the administrator and heirs of an estate any federal forum in which to resolve incompatible claims of domicile.

Having held in this case that there is no legal bar to both California and Texas taxing the Hughes estate on the basis of domicile, the Court surprisingly concludes in today's decision in *California* v. *Texas, post,* p. 164, that there presently exists a justiciable controversy "between" those two States as to which actually was Hughes' domicile.[3] But these two cases—both decided today and both arising from the same set of facts—cannot be reconciled. Under the holding in the in-

---

[1] 28 U. S. C. § 1335.

[2] Nevada imposes no estate tax and therefore has not appeared as a party.

[3] As a result of this decision, the Hughes heirs apparently will not suffer unfair double taxation. Other heirs of other estates presumably will not be so fortunate.

stant case that there is no federal prohibition against two States taxing the Hughes estate on the basis of domicile, the mere assertion of claims by the two States cannot suffice to establish a controversy "between" them. In finding that there is a case ripe for decision, the Court must rely on a double contingency: first, that both States *might* win judgments in their own courts that Hughes was a domiciliary subject to estate taxation; and second, that in such a case the Hughes estate *might* not be large enough to satisfy both claims. This is too speculative a foundation to support the conclusion that there is a case or controversy appropriately within our original jurisdiction.

In my view the Court's decisions in these cases rest on a misconception of the rights and obligations created by our federal system, both in its constitutional and in its statutory aspects. Accordingly I dissent.

## I

The issues before the Court today are substantially identical to those presented in *California* v. *Texas*, 437 U. S. 601 (1978). In that case the Court unanimously denied California's motion for leave to file an original complaint. The Court's one-sentence order did not explain our decision to decline to exercise our exclusive original jurisdiction over controversies "between" States. Justice Stewart, however, in an opinion that JUSTICE STEVENS and I joined, stated fully his reasons for agreeing that there existed no case or controversy between States.[4] He argued cogently that California's complaint "contain[ed] the seeds of two distinct lawsuits":

> "One is a dispute between two States as to the proper division of a finite sum of money. The other is a suit in the nature of interpleader to settle the question of a de-

---

[4] JUSTICE BRENNAN also filed a concurring opinion tentatively accepting Justice Stewart's conclusion and stating that he would "deny California's motion, at least until such time as it is shown that . . . a statutory interpleader action cannot or will not be brought." 437 U. S., at 601, 602. I too filed a concurring opinion. *Id.*, at 615.

cedent's domicile for purposes of the taxes to be imposed upon his estate. But the suit in the nature of interpleader is not within the original and exclusive jurisdiction of this Court because it is not a dispute between States. And the dispute between the States, if indeed it is justiciable at all, is certainly not yet a case or controversy within the constitutional meaning of that term." *Id.*, at 610–611.

No material fact has changed since 1978. On the premises of the Court's opinion, there still is no justiciable controversy between Texas and California. See *California* v. *Texas, post,* at 170 (POWELL, J., dissenting).[5] There is, however, a ripe dispute about the estate's tax liability to the two States—a dispute of the kind for which federal interpleader jurisdiction ought to be available.

## II

In our 1978 decision in *California* v. *Texas, supra,* four Justices of this Court suggested that the administrator of the Hughes estate might invoke the Federal Interpleader Act to protect the estate from taxation based on inconsistent claims of domicile. Contradicting the clear message conveyed by our decision in that case, the Court today finds interpleader unavailable on the ground that a suit against the state taxing officials is barred by the Eleventh Amendment.

---

[5] The Court's main ground for distinguishing the situation in 1978 from the situation today seems to be that "it seemed to several Members of the Court [in 1978] that statutory interpleader might obviate the need to exercise our original jurisdiction." *California* v. *Texas, post,* at 168. Yet this argument simply is unresponsive to the question whether there is an actual case or controversy for which our original jurisdiction properly can be invoked. The Court notes that "several other uncertainties" have disappeared. *Post,* at 169. But its arguments are makeweights. Until the States have obtained conflicting judgments in their own courts, there is no ripe "dispute between two States as to the proper division of [the] finite sum of money" comprising the Hughes estate. *California* v. *Texas,* 437 U. S. 601, 610 (1978) (Stewart, J., concurring). See *post,* at 170 (POWELL, J., dissenting).

The concurring opinions in *California* v. *Texas, supra,* all proposed that the administrator of the Hughes estate might invoke the "fiction" of *Ex parte Young,* 209 U. S. 123 (1908), as interpreted in *Edelman* v. *Jordan,* 415 U. S. 651 (1974), to bring an interpleader action naming as defendants the taxing officials of Texas and California. The Court today holds otherwise. According to the Court, it is the lawful function of the state officials to litigate Hughes' domicile. There is accordingly no colorable claim that they are acting in excess of their authority under state law; no constitutional violation is alleged; and *Edelman* v. *Jordan* is read narrowly to retain the Eleventh Amendment bar to injunctive suits against state officials not acting unlawfully, even in this case in which no money damages are sought from the state treasury.

There can be no doubt that *Edelman* will admit of a broader construction. The plain language of that decision asserts that the Eleventh Amendment bars only suits "by private parties seeking to impose a liability which must be paid from public funds in the state treasury," *id.*, at 663, and not actions that may have "fiscal consequences to state treasuries . . . [that are] the necessary result of compliance with decrees which by their terms [are] prospective in nature," *id.*, at 667–668. Thus, at least in a case such as this, in which the very controversy is the *result* of our federal system, I continue to believe that resort to federal interpleader is not proscribed by the Eleventh Amendment as construed by *Edelman* v. *Jordan.*

In rejecting this interpretation of *Edelman,* the Court relies at the last on *Worcester County Trust Co.* v. *Riley,* 302 U. S. 292 (1937). If this broader view of *Edelman* "were to be the law," the Court reasons, "*Worcester* must in major part be overruled." *Ante,* at 91. In light of *Edelman,* however, it must be recognized that the law has changed since 1937, and that the legal assumptions on which *Worcester County* rested no longer are uniformly valid. See *California* v. *Texas,* 437 U. S., at 601 (BRENNAN, J., concurring). If *Worcester County* cannot be defended on the basis of its in-

ternal logic and adherence to constitutional principles, this
Court should not be bound by it.

## III

The Court today continues to reason from the premise, ac-
cepted by *Worcester County*, that multiple taxation on the
basis of domicile does not offend the Constitution—even in a
case in which both of the taxing States concede that a person
may have but one domicile.[6]  In my view this premise is
wrong.  As an alternative to the approach that I embraced in
*California* v. *Texas*, I now would be prepared to overrule
*Worcester County* on this point and to hold that multiple tax-
ation on the basis of domicile—at least insofar as "domicile" is
treated as indivisible, so that a person can be the domiciliary
of but one State—is incompatible with the structure of our
federal system.

### A

As Justice Stewart demonstrated in *California* v. *Texas*,
the Court's conclusion in *Texas* v. *Florida*, 306 U. S. 398
(1939)—that there was a controversy between States, identi-
fiable by analogy to a suit in the nature of interpleader—can
be explained only by its concern for "the plight of the estate,
which was indeed confronted with a 'substantial likelihood' of

---

[6] *Worcester County* must be viewed in the context of a constitutional his-
tory that is hardly one of settled consistency.  Only seven years before the
Court decided *Worcester County*, in *Farmers Loan & Trust Co.* v. *Minne-
sota*, 280 U. S. 204 (1930), this Court had overruled *Blackstone* v. *Miller*,
188 U. S. 189 (1903), and held that the Due Process Clause forbids the mul-
tiple taxation of intangibles.  For a time *Farmers Loan & Trust Co.* ap-
peared to have established that only the single State of a person's domicile
could tax intangible property in a decedent's estate.  See *First National
Bank* v. *Maine*, 284 U. S. 312 (1932).  But the Court then reached the con-
trary conclusion in *Worcester County*, finding that inconsistent state-court
adjudications of domicile and consequent assessment of estate taxes did not
violate the Due Process Clause.  *First National Bank* v. *Maine, supra*,
then squarely was overruled by *State Tax Comm'n* v. *Aldrich*, 316 U. S.
174, 181 (1942), which held that multiple taxation of intangibles did not *per
se* offend the Constitution.

multiple and inconsistent tax claims." 437 U. S., at 606. Yet this focus of concern found no justification in the principles actually stated in *Texas* v. *Florida,* and it finds no justification in the principles on which the Court rests today. If the Constitution and laws provide no direct remedy to a decedent's estate faced with multiple taxation on the basis of domicile, there is no principled reason to protect the estate, before the fact, against the bare possibility that multiple taxation may exhaust the estate completely. See 437 U. S., at 611.[7] In my view, however, such taxation is not only unfair but offensive to the Due Process Clause of the Fourteenth Amendment.

## B

Our decisions consistently have recognized that state taxation must be rationally related to "'values connected with the taxing state.'" *Moorman Mfg. Co.* v. *Bair,* 437 U. S. 267, 273 (1978), quoting *Norfolk & Western R. Co.* v. *Missouri State Tax Comm'n,* 390 U. S. 317, 325 (1968). As framed by Justice Frankfurter in *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435, 444 (1940):

> "Th[e] test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return."

Under these principles tangible property generally may be taxed only by the State where it is located. *Curry* v. *McCanless,* 307 U. S. 357, 364 (1939).[8] Physical presence

---

[7] "If it is unfair to subject an estate to two domicile-based taxes when all agree that it is possible to have only one domicile, that unfairness is just as great, if not greater, when a decedent's estate is able to pay the taxes to both States." 437 U. S., at 611.

[8] "When we speak of the jurisdiction to tax land or chattels as being exclusively in the state where they are physically located, we mean no more than that the benefit and protection of laws enabling the owner to enjoy the fruits of his ownership . . . are so narrowly restricted to the state in whose

also is required to justify a state succession tax on the transfer of real property occasioned by the death of the owner. *Treichler* v. *Wisconsin*, 338 U. S. 251 (1949); *Frick* v. *Pennsylvania*, 268 U. S. 473, 492 (1925).

In contrast with real property, intangible personal property is not physically located in any particular place, at least in any simple sense.[9] Moreover, there may be more than one State that has a significant connection with intangible property—for example, the State in which a trust's assets are administered and the State in which the trustee is domiciled. See *Curry* v. *McCanless, supra.* Recognizing these differences, this Court has upheld the multiple taxation of intangible property. The decisions in which the Court has done so have not, however, undermined the fundamental principle that a State's levy of a tax must be connected rationally with the values on which the tax is imposed or with protections that the State has afforded.

In this case both California and Texas—as most States—recognize that a person can have but one domicile. And it would appear settled that domicile provides the only adequate basis for taxation of intangible property in a decedent's estate, not located in the State or otherwise dependent on the protection of its laws. See *Curry* v. *McCanless, supra,* at

---

territory the property is physically located as to set practical limits to taxation by others. Other states have been said to be without jurisdiction and so without constitutional power to tax tangibles if, because of their location elsewhere, those states can afford no substantial protection to the rights taxed . . . ." 307 U. S., at 364.

[9] See *Curry* v. *McCanless*, 307 U. S. 357, 365–366 (1939):

"Very different considerations, both theoretical and practical, apply to the taxation of intangibles, that is, rights which are not related to physical things. Such rights are but relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts. The power of government over them and the protection which it gives them cannot be exerted through control of a physical thing. They can be made effective only through control over and protection afforded to those persons whose relationships are the origin of the rights."

365–366; cf. *Complete Auto Transit, Inc.* v. *Brady*, 430 U. S. 274, 286–288 (1977) (defining Commerce Clause limits on state taxation in terms of connections to and benefits conferred by the taxing State). Here neither State alleges an entitlement to tax the Hughes estate on any other basis. From these premises it follows that multiple taxation based solely on conflicting determinations of domicile not only is unfair, but that taxation on this basis by at least one of the States must lack the only predicate asserted to justify its levy under the Due Process Clause.[10]

It is, of course, true that in 1937 *Worcester County Trust Co.* v. *Riley*, 302 U. S. 292, held that this admitted unfairness did not offend the Constitution. But *Worcester County*'s holding on this point already has been undermined, not only by intervening decisions reiterating due process limits on state taxation of intangible property, see *Norfolk & Western R. Co.* v. *Missouri State Tax Comm'n*, *supra*, at 323–326, and of income, see, *e. g.*, *Mobil Oil Corp.* v. *Commissioner of Taxes*, 445 U. S. 425, 436–442 (1980), but also by cases in which this Court has recognized a fundamental right to travel. See, *e. g.*, *Dunn* v. *Blumstein*, 405 U. S. 330

---

[10] See Chafee, Federal Interpleader Since the Act of 1936, 49 Yale L. J. 377, 383–384 (1940) (footnotes omitted):

"[T]here are two types of double taxation. In one kind, the same property or person is taxed in two states on two different theories. . . . In the other kind of double taxation, a single theory is applied in both states to tax the same person or property, but the two state governments disagree on a vital issue of fact. The *Worcester County Trust Co.* case falls into this class. Both states had the same law, that a death tax is levied only at the decedent's domicile and that a man has only one domicile. The only dispute was, where was that domicile?

"It is rather surprising that almost all the attacks on double taxation . . . have been directed at the first kind, because the second kind seems more unjust. . . . [I]t is highly unfair for both state governments to tell the taxpayer, 'You have to pay only one tax,' and then make him pay twice. The injustice of the situation is clearly brought out by the fact that the courts of each state regard the other state as acting unlawfully, and yet neither state gives the taxpayer any remedy."

(1972); *Shapiro* v. *Thompson,* 394 U. S. 618 (1969). It is only by moving from State to State that a taxpayer risks incurring multiple taxation based on conflicting determinations of domicile. While no single State can be charged with creating this risk, the fact of its existence cannot be defended. The threat of multiple taxation based solely on domicile simply is incompatible with the structural principles of a federal system recognizing as "fundamental" a constitutional right to travel.

## C

By holding that multiple taxation based on domicile is prohibited by the Due Process Clause, the Court could lay the basis for resolution of disputes such as this one under the interpleader jurisdiction of the federal district courts. By alleging that state taxing officials threatened the estate with multiple liability, an administrator would state a colorable claim that the relevant state officers were acting outside of constitutional limits and thus that they were acting in their individual capacities under *Ex parte Young,* 209 U. S. 123 (1908). The Eleventh Amendment thus would not bar the suit under *Ex parte Young* and *Edelman* v. *Jordan,* and the interpleader requirement of competing claimants would be satisfied.

Professor Zechariah Chafee, the father of the federal interpleader statute, argued: "It is our federal system which creates the possibility of double taxation. Somewhere within that federal system we should be able to find remedies for the frictions which that system creates." Federal Interpleader Since the Act of 1936, 49 Yale L. J. 377, 388 (1940).

In my view the Due Process Clause provides the *right* to be free of multiple taxation of intangibles based on domicile. The Federal Interpleader Act provides the remedy.

As the Court holds otherwise, I respectfully dissent.