David J. BARRY, Donald J. Burns,
Frederick P. Seabrook, and Michael
R.F. Wilkins, Plaintiffs,

v.

Governor Kirk FORDICE, in his capacity
as Chairman and Commissioner of the
State Bond Retirement Commission and
in his capacity as Commissioner of the
State Bond Commission; Attorney General
Mike Moore, in his capacity as Secretary
and Commissioner of the State
Bond Retirement Commission and in his
capacity as Commissioner of the State
Bond Commission; Treasurer Marshall
Bennett, in his capacity as Commissioner
of the State Bond Retirement Commission
and in his capacity as Commissioner
of the State Bond Commission;
Auditor Steve Patterson, in his capacity
as Advisor to the State Bond Commission;
and Tax Commission Chairman
Ed Buelow, Jr., in his capacity as Advisor
to the State Bond Commission, Defendants.

Civ. A. No. J92–0559(W)(C).

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 3, 1992.

**512**

Paul M. Neville, Jackson, MS, for plaintiffs.

T. Hunt Cole, Jr., Office of Atty. Gen., Jackson, MS, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

WINGATE, District Judge.

Before the court is the motion of defendants, pursuant to Rule 12(b)(1)[1] of the Federal Rules of Civil Procedure, to dismiss this action for want of subject matter jurisdiction. Defendants contend that since the real substantial party in interest in this lawsuit is the State of Mississippi, the Eleventh Amendment[2] to the United States Constitution bars this action. Plaintiffs oppose the motion. Nevertheless, the court is persuaded by defendants' motion and hereby grants same for the reasons which follow.

### I.

The complaint alleges that the plaintiffs are owners and/or holders of certain pre-Civil War bonds issued by the State of Mississippi, i.e., "Mississippi Planters Bank Bonds" and "Mississippi Union Bank Bonds." The plaintiffs, David J. Barry, Donald Burns, Frederick Seabrook, and Michael Williams, are citizens of Great Britain. The defendants are the following officers of the State of Mississippi: the Governor, the Attorney General, the Treasurer, the Auditor, and the Tax Commission Chairman. All defendants are sued in their official capacities.

The complaint alleges that the bonds are unpaid and past due by the State of Mississippi and that the sum of $11,322,990.00 is currently due.[3] The complaint further alleges that payment has been demanded and refused and that state enactments and § 258[4] of the Mississippi Constitution (1890) prevent the payment by Mississippi on the aforementioned bonds. The complaint contends that this legislated and constitutionally-barred non-payment violates various federal constitutional provisions and statutes, namely, Article VI, Clause 2, of the Constitution of the United States of America; Article I, Section X, Clause 1, of the Constitution of the United States of America; Article I, Section IX, Clause 3, of the Constitution of the United States of America; Amendment V to the Constitution of the United States of America; Amendment XIV to the Constitution of the United States of America; Article 10 and Article 28 of the Treaty of Amity, Commerce and Navigation between the United States of America and Great Britain entered into force on October 28, 1795, and Title 42 U.S.C. § 1981, § 1983 and other unspecified statutory enactments of the United States Congress. Accordingly, pursuant to federal question jurisdiction, 28 U.S.C. § 1331,[5] and federal diversity jurisdiction, 28

---

1. Rule 12. Defenses and Objections—When and How Presented—By Pleading or Motion—Motion for Judgment on the Pleadings

    **(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter,....

2. AMENDMENT XI—SUITS AGAINST STATES

    The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

3. Plaintiffs arrive at the figure of $11,322,990.00 by adding unpaid interest to the bonds' alleged face value of $1,475,000.00.

4. **Section 258.** The credit of the state shall not be pledged or loaned in aid of any person, association, or corporation; and the state shall not become a stockholder in any corporation or association, nor assume, redeem, secure, or pay any indebtedness or pretended indebtedness alleged to be due by the state of Mississippi to any person, association, or corporation whatsoever, claiming the same as owners, holders, or assignees of any bond or bonds, now generally known as "Union Bank" bonds and "Planters Bank" bonds.

5. Title 28 U.S.C. § 1331 states as follows:

    The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

U.S.C. § 1332,[6] the plaintiffs seek declaratory and injunctive relief which would require the defendants to honor the bonds and permit the plaintiffs to recover monetary judgment for all damages allowed by law.

## II.

As above stated, the defendants contend that the real party in interest here is the State of Mississippi and that the ultimate goal of the plaintiffs is to recover payment on these bonds. Since the State of Mississippi has not permitted this lawsuit, say defendants, this lawsuit falls under the strictures of the Eleventh Amendment to the United States Constitution which bar this action. Defendants cite the cases of *Cory v. White,* 457 U.S. 85, 90–91, 102 S.Ct. 2325, 2328–29, 72 L.Ed.2d 694 (1982) (the Eleventh Amendment does not only bar claims of monetary relief asserted against the state, relief of an equitable nature may also be barred); *Edelman v. Jordan,* 415 U.S. 651, 661–669, 94 S.Ct. 1347, 1355–1359, 39 L.Ed.2d 662 (1974) (the Eleventh Amendment bars any suit which would have the effect of imposing retroactive monetary liability against the state treasury); *Parden v. Terminal Ry.,* 377 U.S. 184, 187, 84 S.Ct. 1207, 1210, 12 L.Ed.2d 233 (1963) ("a suit on state debt obligations, without the state's consent, was precisely the 'evil' against which both the Eleventh Amendment and the expanded immunity doctrine of *Hans* [*v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)] were directed.").

The plaintiffs do not quarrel with the defendants' authority, nor with the defendants' view of the law. Plaintiffs simply say that this body of law does not apply to the thrust of their complaint. Citing *Fletcher v. Peck,* 10 U.S. 87, 6 Cranch 87, 3 L.Ed. 162 (1810); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); and *Brennan v. Stewart,* 834 F.2d 1248 (5th Cir.1988), plaintiffs argue that since their complaint only aims to adjudicate the constitutionality of certain state statutes and state constitutional provisions which presently forbid the State of Mississippi from paying the bonds, their contentions are beyond the scope of the Eleventh Amendment.

## III.

A federal district court is under an initial obligation to review the allegations of a complaint to determine if the court's jurisdiction over the suit is barred by the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984). Like other types of immunities which provide a defense of suit, the Eleventh Amendment immunity of a state is a threshold matter that must be addressed prior to the "merits" of the suit, and any order regarding such an Eleventh Amendment issue is immediately appealable. *Loya v. Texas Department of Corrections,* 878 F.2d 860 (5th Cir.1989).[7]

---

**6.** Title 28 U.S.C. § 1332 states in pertinent part as follows:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

(1) citizens of different States; ...

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

For the purposes of this section, section 1385, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

**7.** In *Loya,* the Fifth Circuit adopted, for purposes of Eleventh Amendment issues, the reasoning of *Mitchell v. Forsyth,* 472 U.S. 511, 525–528, 105 S.Ct. 2806, 2814–2817, 86 L.Ed.2d 411, 53 U.S.L.W. 4798, 2 Fed.R.Serv. 3D (Callaghan) 221 (1985), which holds that the personal immunity defenses entail a right not to stand trial on the merits or be subjected to pretrial proceedings, and that a denial of immunity is immediately and separately appealable. Under *Loya,* the reason for the priority of an Eleventh Amendment issue is clear: like the personal defenses of qualified and absolute immunity, the jurisdictional bar of the Eleventh Amendment provides an immunity from *suit,* not just liability. A personal immunity defense is "an entitlement not to be forced to litigate the consequences of official conduct ...," *Mitchell,* 472 U.S. at 527, 105 S.Ct. at 2816.

## IV.

■ Under the Eleventh Amendment, suits against non-consenting states by their own citizens, by citizens of another state, by citizens of foreign states, or by a foreign nation are prohibited. *Principality of Monaco v. Mississippi*, 292 U.S. 313, 329–331, 54 S.Ct. 745, 750–751, 78 L.Ed. 1282 (1934); *Hughes v. Savell*, 902 F.2d 376, 377 (5th Cir.1990); *Pennhurst II*, 465 U.S. at 97–98, 104 S.Ct. at 906–907. In *Pennhurst II*, the Supreme Court stated:

That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given: not one brought by citizens of another State, or by citizens or subjects of a foreign State, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the fundamental rule of which the Amendment is but an exemplification.

465 U.S. at 99, 104 S.Ct. at 907, *quoting Ex parte State of New York No. 1*, 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921) (emphasis in original). The Eleventh Amendment is an "explicit limitation" on the jurisdiction of the Court and serves as "a specific constitutional bar against hearing even federal claims that otherwise would be within the jurisdiction of the federal courts." 465 U.S. at 119–120, 104 S.Ct. at 918.[8]

■ The Eleventh Amendment bar is not limited to suits seeking monetary relief, it may also bar suits seeking equitable relief. *Cory v. White*, 457 U.S. 85, 90–91, 102 S.Ct. 2325, 2328–2329, 72 L.Ed.2d 694 (1982); *Pennhurst II*, 465 U.S. at 100–101, 104 S.Ct.

at 908 (the "jurisdictional bar applies regardless of the relief sought"). Moreover, the Eleventh Amendment also prohibits suits that are nominally against state officials in their official, rather than personal, capacities, where, in fact, the state is the "real substantial party in interest." *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945); *Hughes v. Savell*, 902 F.2d at 377–378. As stated in *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), under this principle, the Eleventh Amendment therefore bars a suit against state officers who are "joined as collective representatives of the state, not as individuals against whom a personal judgment is sought." 323 U.S. at 463–464, 65 S.Ct. at 350.

When the action is in essence one for the recovery of money from the State, the State is the real substantial party in interest, and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

*Ford Motor Co. v. Department of Treasury*, 323 U.S. at 463–464, 65 S.Ct. at 350; *also see Hughes*, 902 F.2d at 378. "The State is the real party in interest if the decision rendered in a case would operate against the sovereign, expending itself on the public treasury, interfering with public administration, or compelling the State to act or refrain from acting." *Pennhurst II*, 465 U.S. at 101, 104 S.Ct. at 908. The Eleventh Amendment thus bars any suit which would have the effect of imposing retroactive monetary liability against a state's treasury.[9] *Edelman v. Jordan*, 415 U.S. 651, 661–669, 94 S.Ct. 1347, 1354–1359, 39 L.Ed.2d 662 (1974) (noting, *inter alia*, that the Eleventh Amendment barred a claim which resulted from a past breach of legal duty on the part of state officials); *Bullock v. Reed*, 872 F.2d 671 (5th Cir.1989).

---

8. The Eleventh Amendment thus applies to bar constitutional or federal statutory claims against States. In *Pennhurst II*, the Court stated: "For example, if a lawsuit against state officials under 42 U.S.C. § 1983 alleges a constitutional claim, the federal court is barred from awarding damages even though the claim arises under the Constitution." 465 U.S. at 120, 104 S.Ct. at 918.

9. According to the Supreme Court, when the Eleventh Amendment was proposed, many states were in financial difficulty from debt obligations to foreign creditors. *Petty v. Tennessee-Missouri Bridge Comm.*, 359 U.S. 275, 276 n. 1, 79 S.Ct. 785, 787 n. 1, 3 L.Ed.2d 804 (1959).

## V.

█ The foregoing principles are plainly dispositive with regard to the allegations before this court. As a matter of law, the jurisdictional bar of the Eleventh Amendment applies here. The complaint is brought by citizens of Great Britain, a foreign state. The defendant officials are joined in their official capacity as collective representatives of the state. This lawsuit, disfavored by the State of Mississippi, is based upon allegedly past due "Planters Bank Bonds" and "Union Bank Bonds," upon which the plaintiffs hope to recover. Clearly, the State of Mississippi is the real substantial party in interest, as any relief sought by the plaintiffs would ultimately operate against the state treasury. *See Ford Motor Co.*, 323 U.S. at 464, 65 S.Ct. at 350; *Hughes*, 902 F.2d at 378; *Pennhurst II*, 465 U.S. at 101, 104 S.Ct. at 908.

## VI.

█ The Supreme Court has consistently held that suits by debt holders against state officials are barred by the Eleventh Amendment even where there is an allegedly unconstitutional state statute precluding payment and where the plaintiffs, allegedly, seek equitable, rather than monetary, relief against state officials in their official capacity. *See Louisiana v. Jumel*, 107 U.S. 711, 719–724, 2 S.Ct. 128, 134–139, 27 L.Ed. 448, 451–452 (1882); *Ex parte Ayers*, 123 U.S. 443, 500–505, 8 S.Ct. 164, 180–183, 31 L.Ed. 216, 228–229 (1887); *North Carolina v. Temple*, 134 U.S. 22, 10 S.Ct. 509, 33 L.Ed. 849 (1890). These cases, and the principles set forth therein, remain good law today. *See*, e.g., *Pennhurst II*, 465 U.S. at 101, 104 S.Ct. at 908 (citing *Jumel* and *Ayers* for the proposition that the Eleventh Amendment bars a suit where the state is the real substantial party in interest); *Edelman v. Jordan*, 415 U.S. 651, 667, 94 S.Ct. 1347, 1357–1358, 39 L.Ed.2d 662 (1974) (citing *Ayers* with approval).

In *Louisiana v. Jumel, supra*, pursuant to an 1874 state statute, Louisiana issued bonds and provided for a levy and collection of taxes to pay the interest. In 1880, a new state constitutional provision (the "Debt Ordinance") was enacted. The Debt Ordinance precluded payment of the bond coupons and the levying or collecting of taxes to pay the interest. The bond holders filed suits in federal court for equitable relief and mandamus against the state treasurer, state auditor, and other state officials on the ground that the debt ordinance was unconstitutional. The *Jumel* Court characterized the dispute as follows:

> These ... are suits by creditors at large, of the class provided for in the Act of 1874, to compel the officers of the State, by judicial process, to enforce the provisions of the Act, when the State, by an amendment to its Constitution, has undertaken to prohibit them from doing so, and when the court, if it requires an officer to proceed, cannot protect him with a judgment to which the State is a party. The persons sued are the executive officers of the State, and they are proceeded against in their official capacity. The money in the Treasury is the property of the State, and not in any legal sense the property of the bond or coupon holders.

> \*     \*     \*     \*     \*     \*

> The relief asked will require the officers, against whom the process goes, to act contrary to positive orders of the supreme political power of the State, whose creatures they are and to which they are ultimately responsible in law for what they do.

*Id.*, 107 U.S. at 720–721, 2 S.Ct. at 135–136, 27 L.Ed. at 451.

The Supreme Court held that even though the plaintiffs "do not, in direct terms, ask for payment of the bonds and coupons they hold" and even though it was conceded that the debt ordinance might be unconstitutional, the Eleventh Amendment barred the suit against the officials. 107 U.S. at 721, 2 S.Ct. at 136, 27 L.Ed. at 451–452. The Court observed that when a state may not be sued, a federal court is not authorized "to set up its jurisdiction over the officers in charge of the public moneys, so as to control them as against the political power in the administration of the finances of the state." *Jumel*, 107 U.S. at 728, 2 S.Ct. at 142, 27 L.Ed. at 452.

Similarly, in *Ex parte Ayers, supra*, the plaintiffs were owners of tax receivable cou-

pons issued by Virginia, which alleged that the coupons had been rendered worthless by an unconstitutional state statute. Plaintiffs sued state officials in their official capacities to enjoin enforcement of the challenged statute. 123 U.S. at 491–494, 8 S.Ct. at 175–177, 31 L.Ed. at 225. The Supreme Court found that the state was the substantial party in interest and that the Eleventh Amendment consequently barred the suit.

> [A] bill, the object of which is by injunction, indirectly, to compel the specific performance of the contract, by forbidding all those acts and doings which constitute breaches of the contract, must also, necessarily, be a suit against the State. In such a case, though the State be not nominally a party on the record, if the defendants are its officers and agents, through whom alone it can act in doing and refusing to do the things which constitute a breach of its contract, the suit is still, in substance, though not in form, a suit against the State.

> \*   \*   \*   \*   \*   \*

> In a certain sense and in certain ways the Constitution of the United States protects against laws of a State subsequently passed impairing their obligation, and this provision is recognized as extending to contacts between an individual and a State; but this, as is apparent, is subject to the other constitutional principle, of equal authority, contained in the 11th Amendment, which secures to the State an immunity from suit.

*Ayers,* 123 U.S. at 502–503, 8 S.Ct. at 181–182, 31 L.Ed. at 228–229.

In *North Carolina v. Temple,* 134 U.S. 82, 10 S.Ct. 509, 33 L.Ed. 849 (1890), bond holders sued the State Auditor, claiming that a state provision prohibiting bond payments or tax collection to pay interest was unconstitutional. The Supreme Court pointed out that the Auditor had no "personal" interest in the matter and that it was "perfectly clear that the suit against the auditor was virtually a suit against North Carolina and was thus barred by the Eleventh Amendment." *Temple,* 134 U.S. at 30, 10 S.Ct. at 511, 33 L.Ed. at 852. *Accord: Louisiana ex rel. New York*

*Guaranty and I. Co. v. Steele,* 134 U.S. 230, 232, 10 S.Ct. 511, 512, 33 L.Ed. 891 (1890).

The case most destructive to the plaintiffs' position is *Principality of Monaco v. Mississippi,* 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282, a lawsuit which addresses a factual situation nearly identical to that before this court. The Principality of Monaco sued the State of Mississippi to recover payment on defaulted "Planters Bank Bonds" and "Union Bank Bonds" issued by Mississippi which had been transferred to Monaco as holder. The Supreme Court held that the Eleventh Amendment precluded a suit against a nonconsenting state by a foreign nation or by citizens of a foreign nation. Hence, Monaco's suit was barred. *Id.* at 328–331, 54 S.Ct. at 750–751.

> To suits against a state, without her consent, brought by citizens of another State or by citizens or subjects of a foreign State, the Eleventh Amendment erected an absolute bar.

*Id.* at 329, 54 S.Ct. at 750.

The plaintiffs argue that the defendants' reliance on *Monaco* is misplaced. Unlike the instant litigation, in *Monaco,* the plaintiffs in *Monaco* brought an original action in the United States Supreme Court and named the State of Mississippi as a defendant. This distinction is irrelevant as to the issues before this court. Nothing in the *Monaco* opinion suggests that a different result would have occurred if the action had been filed originally in a district court rather than the Supreme Court. On the contrary, the Eleventh Amendment principles set forth in *Monaco* have been expressly relied upon in actions which were originally brought in federal district courts. *See, e.g., Blatchford v. Native Village of Noatak,* —— U.S. ——, ————, 111 S.Ct. 2578, 2581–2582, 115 L.Ed.2d 686, 694–695 (1991); *Welch v. Texas Dept. of Highways and Public Transportation,* 483 U.S. 468, 481, 107 S.Ct. 2941, 2950, 97 L.Ed.2d 389 (1986); *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 547, 105 S.Ct. 1005, 1015–1016, 83 L.Ed.2d 1016 (1985); *Pennhurst II,* 465 U.S. at 97, 140, 104 S.Ct. at 906, 929–930; *Lary v.*

*Kavanaugh,* 611 F.Supp. 562, 564 (D.C.Tex. 1985).

The cases cited by the plaintiffs offer them no support. *Fletcher v. Peck,* 10 U.S. 87, 6 Cranch 87, 3 L.Ed. 162 (1810), for example, is not an Eleventh Amendment case but a Contracts Clause case. Hence, *Fletcher* is largely irrelevant to the issues before this court. The Eleventh Amendment is not raised by the litigants or addressed by the Court in *Fletcher.* The suit in *Fletcher* was between two citizens of the United States; the lawsuit did not pit a state against citizens of another state, of its own state, or of a foreign state. The *Fletcher* Court merely held that "[a] law, annulling conveyances, is unconstitutional because it is a law impairing the obligation of contracts within the meaning of the Constitution of the United States." *Id.,* 10 U.S. at 87. Any tenuous relevance *Fletcher* may have to the instant case is further dissipated by the fact that *Fletcher* was decided prior to the advent of the expansion of Eleventh Amendment immunity signaled in *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1989).

Nor is *Ex parte Young's* narrow exception to the Eleventh Amendment, upon which the plaintiffs primarily rely, applicable to the case to the case before this court. The exception to the Eleventh Amendment set forth in *Ex parte Young* is an isolated occurrence, and it has been narrowed, rather than expanded, by the courts. The *Ex parte Young* Court held that the Eleventh Amendment did not bar an action in the federal courts seeking to enjoin the Attorney General of Minnesota from enforcing a statute deemed to violate the Fourteenth Amendment of the United States Constitution. *Ex parte Young,* 209 U.S. at 134, 28 S.Ct. at 446. No money was sought, nor was any awarded. Here, the plaintiffs seek monetary relief which is retrospective in nature.

Similarly, *Edelman v. Jordan* refutes, rather than supports, plaintiffs. The *Edelman* Court narrowed the *Ex parte Young* exception to the Eleventh Amendment when it held that the Eleventh Amendment bars any suit, no matter how characterized by the plaintiff, which would have the effect of imposing retroactive, monetary liability on the state treasury. Here, plaintiffs' requested relief, though characterized as declaratory and injunctive by the plaintiffs, if granted, will inevitably impose retroactive monetary liability on the state treasury. Plaintiffs' requested relief "is in practical effect indistinguishable in many aspects from an award of damages against the state." *Id.* at 668, 94 S.Ct. at 1358. Thus, plaintiffs' claim is condemned, rather than supported, by *Edelman,* which states, "[a] suit by private parties seeking to impose a liability payable from public funds in the state treasury is foreclosed by the [Eleventh] Amendment if the state does not consent to the suit." *Id.* at 651, 94 S.Ct. at 1350.

Plaintiffs also cite to the following quote from *Brennan v. Stewart,* 834 F.2d 1248, 1253 (5th Cir.1988): "The Eleventh Amendment and the doctrine of *Ex parte Young* together create a relatively simple rule of state immunity. Basically, prospective injunctive or declaratory relief against a state is permitted—whatever its financial side effects—but retrospective relief in the form of a money judgment in compensation for past wrongs—no matter how small—is barred." But it is exactly because plaintiffs' relief here is not of a prospective or substantively declaratory nature that this reliance on *Brennan* is misplaced.

*Brennan* and the instant case are factually inapposite. In *Brennan,* the plaintiffs' requested relief was clearly of a prospective and declaratory nature. The *Brennan* plaintiff was an unsuccessful applicant for a temporary hearing aid training permit who brought an action against the Texas Board of Examiners on Fitting and Dispensing of Hearing Aids for violation of due process, equal protection, and civil rights statutes. *Id.* at 1250. The relief which the *Brennan* Court granted the plaintiff was not monetary nor retrospective. The character of the relief sought here, past due payments and interest, is essentially monetary and retrospective. Plaintiffs hope to evade the bar of the Eleventh Amendment by mischaracterizing the nature of their claim. However, *Ford Motor Company,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945), and other Supreme Court cases have spoken emphatically on the point:

The nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding. [citations omitted] And when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to make its sovereign immunity from suit even though individual officials are nominal defendants.

Thus, this court rejects the plaintiffs' attempt to characterize their lawsuit in a garb that would be found in the wardrobe of the narrow *Ex parte Young* exception.

### VII.

Plaintiffs may not escape the thrust of the Eleventh Amendment by artful pleading, disguised aims or naming nominal parties. It is plainly Mississippi's alleged past default on the pre-Civil War Mississippi Planters Bank Bonds and Mississippi Union Bank Bonds, rather than any individual's misconduct, which is at the heart of the action here. The Eleventh Amendment is clear in its prohibition and certain in its scope. Plaintiffs' action here certainly falls within its embrace, and the action must be dismissed.

SO ORDERED AND ADJUDGED.