MSA REALTY CORPORATION, an Indiana Corporation, Plaintiff,

v.

The STATE OF ILLINOIS; Jim Edgar, as Governor of the State of Illinois; Douglas Whitley, as Director of the Department of Revenue of the State of Illinois; Patrick Quinn, as Treasurer of the State of Illinois and Dawn Clark Netsch, as Comptroller of the State of Illinois, Defendants.

No. 92 C 3540.

United States District Court,
N.D. Illinois, E.D.

July 7, 1992.

James H. Ryan, Kai Allen Nebel, Darryl R. Davidson, Mary Beth Snyder, Keck, Mahin & Cate, Chicago, Ill., for plaintiff.

Roland W. Burris, Illinois Atty. Gen., Louise M. Calvert, Asst. Atty. Gen., Revenue Litigation Div., Marita Sullivan, Asst. Atty. Gen., General Law Div., Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] The court grants the motion for the following reasons.

## FACTS

In 1977, the State of Illinois adopted the Tax Increment Allocation Redevelopment Act, Ill.Rev.Stat. ch. 24, ¶ 11–74.4–1 *et seq.* (the "Act"), to promote redevelopment in blighted or conservation areas. It sought to accomplish this goal through enabling Illinois municipalities to create tax increment financing districts ("TIF districts") in statutorily qualified areas within their boundaries. The municipalities could then use local real property tax increment and, after amendment in 1985, sales tax increment revenues to finance redevelopment costs. The participating municipalities become obligated to cover various redevelopment costs and are authorized to issue bonds and/or other obligations for financing.

The Village of Buffalo Grove on March 16, 1987, adopted a redevelopment project by Ordinance No. 87–25. Buffalo Grove authorized the issuance of $8.5 million in revenue bonds to cover the project costs. The ordinance provides that the bonds are limited obligations, payable solely from the collection of the incremental taxes and amounts on deposit in various funds and accounts. Incremental taxes include the amount of real property taxes due to Buffalo Grove in accordance with the Act, plus the amount of various sales taxes due to Buffalo Grove in accordance with the Act. The increments are calculated by a formula contained in the Act or its amendments. The provisions of the ordinance constitute a contract between Buffalo Grove and the registered owners of the bonds.[2]

---

1. MSA Realty also filed a motion for summary judgment in its response to defendants' motion to dismiss. Because the court dismisses the case on defendants' motion, the court denies MSA Realty's motion for summary judgment as moot.

2. The parties agree the State of Illinois is not a party to the contract. MSA Realty couches its complaint in terms of enforcing Illinois's "promise" or protecting MSA Realty's "reliance on the state sales tax increment program in the issuance of bonds" which was "expressly induced by the legislation." In its response to

On March 1, 1987, Buffalo Grove issued its Tax Increment Allocation Revenue Bonds in the total principal amount of $8.5 million, for a term of 10 years, interest payable semi-annually, and principal payable at the expiration of the term. The security for the bonds, and the exclusive source for debt service on the bonds, include real property tax increment, municipal sales tax increment, and state sales tax increment. MSA Realty purchased the bonds on June 30, 1987.

MSA Realty filed suit on May 29, 1992 alleging that the State of Illinois and several executive officials—Governor Jim Edgar, Director Douglas Whitley of the Department of Revenue, Treasurer Patrick Quinn, and Comptroller Clark Netsch, all in their official capacities—impaired MSA Realty's contract rights in violation of the Contracts Clause of the United States Constitution. *U.S. Const.* art. I, § 10, cl. 1. MSA Realty further claims the defendants' actions and inactions constitute violations of the Fourteenth Amendment and the contracts clause, thus entitling it to relief under 42 U.S.C. § 1983.

MSA Realty maintains that the executive branch impaired the obligation of contracts by (1) seeking and obtaining a formula reduction in the statutory entitlement apportioned for the TIF districts, (2) failing and refusing to budget amounts the Act required, and (3) vetoing legislative appropriations "endeavoring to comply with the Act." MSA Realty further asserts that various legislative enactments impaired its contract rights by reducing the amount of tax increment revenues available for Buffalo Grove's TIF districts, thus impairing its right to the payment of interest and principal on the bonds. Furthermore, MSA Realty attempts to enjoin the Illinois General Assembly from entertaining the Governor's fiscal year 1993 budget proposal which expressly fails to budget any amount for the state sales tax increment program.

defendants' motion to dismiss, MSA Realty further states that "the State had made an unequivocal commitment to return state sales tax increment ... to the Village of Buffalo Grove's [TIF district] fund to service the Bonds" and that MSA Realty "had the right to rely on the Act's

Defendants filed the present motion to dismiss contending that the complaint fails to state a claim and that the court lacks jurisdiction. The court will address the issues under each count of MSA Realty's complaint.

## DISCUSSION

 Count II of MSA Realty's complaint alleges a claim under Section 1983. On a motion to dismiss, all well-pleaded factual allegations are taken as true. *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991); *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir.1991). The court also accepts all reasonable inferences drawn from those allegations as true. *Meriwether v. Faulkner,* 821 F.2d 408, 410 (7th Cir.), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). The complaint need not specify the correct legal theory nor point to the right statute. *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). However, a party fails to state a claim upon which relief may be granted if that party can prove no set of facts upon which legal relief may be granted. *Ross v. Creighton Univ.,* 957 F.2d 410, 413 (7th Cir.1992).

 MSA Realty's Section 1983 claim is directed against the State of Illinois, as well as a number of executive officials. States and State officials acting in their official capacities are unamenable to suit under Section 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). Accordingly, the court dismisses MSA Realty's Section 1983 claim alleged in Count II.

 Count I contains MSA Realty's claim under the contracts clause. Lack of subject matter jurisdiction is appropriately raised in a motion to dismiss under Fed. R.Civ.P. 12(b)(1), and may be supported by any documents needed to resolve the issue.

unequivocal commitment to return the full ... increment to Buffalo Grove." MSA Realty, however, cannot seek to enforce any alleged promise which Illinois may have made to Buffalo Grove.

*Barnhart v. United States*, 884 F.2d 295, 296 (7th Cir.1989), *cert. denied*, 495 U.S. 957, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990). Once questioned, it is plaintiff's burden to establish that all jurisdictional requirements have been satisfied. *Kontos v. U.S. Dept. of Labor*, 826 F.2d 573, 576 (7th Cir.1987). In this context, it is proper for the court to look beyond the jurisdictional allegations in the complaint and to view whatever evidence has been submitted in response to the motion. *Roman v. United States Postal Serv.*, 821 F.2d 382, 385 (7th Cir.1987).

■ The defendants base their jurisdictional objections on the political question doctrine and the Eleventh Amendment. First, there are six types of controversies the political question doctrine may bar a district court from determining: (1) cases that involve "a textually demonstrable constitutional commitment of the issue to a coordinate political" branch; (2) cases that "lack ... judicially discoverable and manageable standards" for determination; (3) cases involving initial policy determinations clearly reserved for nonjudicial discretion; (4) issues that are impossible for a court to resolve independently without "expressing lack of the respect due coordinate branches of government"; (5) issues involving a need for "unquestioning adherence to a political decision already made"; or (6) decisions that involve potential "of embarrassment for multifarious pronouncements by various departments on one question." *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962).

■ Political questions, however, only involve federal separation of powers concerns and do not involve issues which pertain to the proper relationship between the federal judiciary and the state governments. *Id.* at 210, 82 S.Ct. at 706; *see also* Nowak & Rotunda, *Constitutional Law* 106 (4th ed. 1991) ("it is the relationship between the judiciary and the coordinate branches of the Federal Government, and not the federal judiciary's relationship to the states, that gives rise to the 'political question' "). Accordingly, the court does not lack jurisdiction over MSA Realty's claim because of its political nature.

■ Second, there is a question as to whether the Eleventh Amendment bars this court from determining if Illinois has violated the contracts clause. The Eleventh Amendment declares that federal courts lack jurisdiction over suits "commenced or prosecuted against one of the United States by Citizens of another State...." *U.S. Const.* amend. XI. The Supreme Court has long held that, absent a waiver or valid congressional override, the Eleventh Amendment bars actions brought in federal court against a state. *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986); *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). This is true whether the plaintiff seeks legal or equitable relief. *Papasan*, 478 U.S. at 276, 106 S.Ct. at 2939; *see also Cory v. White*, 457 U.S. 85, 90, 102 S.Ct. 2325, 2328, 72 L.Ed.2d 694 (1982) (where a state is the real party at interest and has not consented to suit, the Eleventh Amendment bars suit regardless of the nature of the relief sought).

■ By contrast, a plaintiff may bring an injunctive or declaratory action grounded on federal law against state officials as defendants and overcome the immunity of the Eleventh Amendment. *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 102, 105, 104 S.Ct. 900, 909, 910, 79 L.Ed.2d 67 (1984); *Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 454–55, 52 L.Ed. 714 (1908). Where, however, there is no ongoing violation of federal law, a federal court cannot issue a declaratory judgment that state officials violated federal law in the past. *Green v. Mansour*, 474 U.S. 64, 73, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985). As a result, a federal court may grant prospective injunctive relief to prevent continuing violations of federal law without an Eleventh Amendment problem, *Young*, 209 U.S. at 155–56, 28 S.Ct. at 452, yet any claim for retrospective relief is barred. *Papasan*, 478 U.S. at 278, 106 S.Ct. at 2940. Further, even where "a substantial ancillary effect

on the state treasury" accompanies the relief sought, the Eleventh Amendment does not bar relief aimed to directly "bring an end to a present violation of federal law." *Id.*

In *Edelman v. Jordan,* the Supreme Court held that the Eleventh Amendment barred an award of retroactive welfare payments which were allegedly wrongfully withheld in violation of various federal regulations and the Fourteenth Amendment. *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974). The Court was concerned that the district court's decree in that case "require[d] payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation to those whose [welfare] applications were processed" incorrectly. *Id.* at 668, 94 S.Ct. at 1358. Further, the retroactive award was "in practical effect indistinguishable in many aspects from an award of damages against the State" because it was "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Id.*

Similarly, in *Papasan,* the Supreme Court held that the Eleventh Amendment barred an action seeking to force various Mississippi officials to provide trust income for public schools in accordance with alleged trust obligations. *Papasan,* 478 U.S. at 281, 106 S.Ct. at 2942. The plaintiffs claimed that a federal grant of land created a perpetual trust for the benefit of the public schools and that the Mississippi officials unlawfully denied the northern counties the resulting economic benefits. *Id.* at 279, 106 S.Ct. at 2940. The Supreme Court determined that the action was barred even though the plaintiffs sued for a breach of the "continuing obligation" to comply with the alleged trust obligations. *Id.* at 281, 106 S.Ct. at 2942. The Court found no substantive difference between the "not-yet-extinguished liability for a past breach of trust and the continuing obligation to meet trust responsibilities...." *Id.*

Insofar as the present alleged violations concern the laws enacted between July 29,

1988 and July 30, 1991 which reduce the tax increment allotted for the municipalities' TIF districts, these concern only a past "impairment," if an impairment at all, and the Eleventh Amendment bars recovery for the enactments covering those dates. Thus, to the extent that MSA Realty is seeking to enforce "an accrued monetary liability" for past impairments of its contract with Buffalo Grove, the Eleventh Amendment bars such relief. *Papasan,* 478 U.S. at 281, 106 S.Ct. at 2942 (quoting *Milliken v. Bradley,* 433 U.S. 267, 289, 97 S.Ct. 2749, 2761, 53 L.Ed.2d 745 (1977) (quoting *Edelman,* 415 U.S. at 664, 94 S.Ct. at 1356)).

On the other hand, MSA Realty also seeks a prospective remedy requiring Illinois to meet its alleged continuing obligation under the statute to fund the bonds and to thus prevent an on-going violation of the Constitution. To the extent the Eleventh Amendment does not bar prospective remedies, the court will address the availability of relief under the contracts clause.

▮ The Contracts Clause of the United States Constitution provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts...." *U.S. Const.* art. I, § 10, cl. 1. To show a violation of the contracts clause, a plaintiff must establish (1) that the State impaired its contract, and (2) that the impairment was substantial. *Association of Surrogates v. State of New York,* 940 F.2d 766, 771 (2d Cir.1991). Next, if private obligations are impaired, the court must determine whether the legislation is a reasonable means to a legitimate public purpose. *Id.* MSA Realty has failed to clear the first hurdle.

▮ The severity of the impairment alleged in this case is minimal at best and most likely non-existent. Defendants correctly point out that MSA Realty's real claim is that the Village of Buffalo Grove is not getting enough money from the Illinois General Assembly. MSA Realty has not alleged that Buffalo Grove failed to pay any interest. There is no allegation that Buffalo Grove will certainly default on

paying the principal by 1997 when it is due. MSA Realty's allegations are mere speculation as to whether Buffalo Grove will have the ability to pay interest or to repay the principal when it becomes due in 1997.

Furthermore, MSA Realty knew the tax increments allotted for TIF districts were subject to alteration by state legislation when it purchased the bonds. The revenue bonds provide that they are issued pursuant to the Act and all laws amendatory and supplemental thereof. Further, the contracts themselves provide that the Act may be amended or supplemented from time to time. The agreement thus encompassed the possibility that the General Assembly would reduce any tax increment supplied to Buffalo Grove.

As far as any future appropriations are involved in this case, these questions are not ripe for adjudication. Any allegation of future appropriations or lack thereof is mere speculation. The principal is due in 1997 and there is no indication in the complaint that an injury sufficiently immediate exists to provide a basis for relief. To the extent MSA Realty has a "right" to have Illinois commit state sales tax increment funds for the purposes of the payment of interest and repayment of principal on its bonds, such is a mere "expectation" at this state of the bonds' maturity. That Buffalo Grove may default on the bonds is a mere supposition.

Accordingly, the court finds that MSA Realty's Section 1983 claim cannot proceed against the State of Illinois or its executive officials. The court further determines that it lacks jurisdiction to entertain MSA Realty's contracts clause claim as it proposes to seek monetary appropriations (i.e., increased funding) from Illinois to remedy any alleged past violations. Last, the court holds that MSA Realty has not alleged a substantial impairment of its contract rights to state a violation of the Contracts Clause of the United States Constitution which would entitle it to prospective relief. There are no allegations that Illinois has canceled Buffalo Grove's bonds or that Illinois has destroyed Buffalo Grove's obligation on the bonds or the protection afforded MSA Realty as a bondholder.

### CONCLUSION

For the reasons stated above, the court grants defendants' motion to dismiss as to both counts of MSA Realty's complaint pursuant to Fed.Rs.Civ.P. 12(b)(1) and 12(b)(6).

IT IS SO ORDERED.