# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-CA-00032-SCT

*DR. CHARLES BARING TRAVERS GRANT, DAVID J. BARRY, FREDERICK PAUL SEABROOK, DR. DONALD JOHN BURNS, MICHAEL ROBERT FRANCIS WILKINS, MR. AND MRS. V. JOHN BATTEN, ROBERT KENNETH PRATT, JOHN EDWARD MORRELL, FRANCIS PETER DUPPA-MILLER, ANGUS MACDONALD, DR. DEREK NORMAN SEATON, BRIAN MICHAEL CARTWRIGHT, DAVID VICTOR CORONNO, ALEC FIELD ATKIN, DOROTHY FAHS BECK, JOE L. HOWELL, JR., DAVID M. BEACH, JAMES C. BLACK, STEPHEN D. PISINSKI, CYNTHIA E. PISINSKI, HENRY J. SOBEL, CATHERINE B. KELLY, DEANE D. KOCHER, II, KAREN A. WHITE, ROBERT J. BECHTOLDT, MARTIN AND RUTH BELL, PAUL PSEISSER, TIMOTHY T. WALRAVEN AND WILLIAM R. TUTEN, III*

*v.*

*STATE OF MISSISSIPPI, STATE BOND COMMISSION, STATE BOND RETIREMENT COMMISSION; KIRK FORDICE, IN HIS OFFICIAL CAPACITIES AS GOVERNOR OF THE STATE OF MISSISSIPPI AND COMMISSIONER OF THE STATE BOND RETIREMENT COMMISSION AND OF THE STATE BOND COMMISSION; MIKE MOORE, IN HIS OFFICIAL CAPACITIES AS ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI AND COMMISSIONER OF THE STATE BOND RETIREMENT COMMISSION AND OF THE STATE BOND COMMISSION; MARSHALL BENNETT, IN HIS OFFICIAL CAPACITIES AS TREASURER OF THE STATE OF MISSISSIPPI AND COMMISSIONER OF THE STATE BOND RETIREMENT COMMISSION AND OF THE STATE BOND COMMISSION; AND EDWARD L. RANCK, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE DEPARTMENT OF FINANCE AND ADMINISTRATION FOR THE STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/16/93 |
| TRIAL JUDGE: | HON. W. O. DILLARD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | BARRY H. POWELL |
| | PAUL M. NEVILLE |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  T. HUNT COLE, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART, REVERSED AND RENDERED IN PART - 12/19/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/9/97 |

**BEFORE DAN LEE, C.J., McRAE AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

¶1. The appeal before this Court seeking to recover on "Planters' Bank Bonds" and "Union Bank Bonds" is the final chapter in a dispute that originated prior to the Great War Between the States. The Chancery Court of the First Judicial District of Hinds County in its October 29, 1993, opinion held that the actions were barred by the running of the statute of limitations, noting that the court did not "know of any that runs over a hundred years." The Chancellor granted the State's Motion for Summary Judgment in light of the Plaintiffs' failure to bring a timely claim within the applicable statute of limitations.

¶2. The complaint alleged that the Plaintiffs owned and/or held certain pre-Civil War bonds of the State of Mississippi known as "Mississippi Planter's Bank Bonds" and "Mississippi Union Bank Bonds". Further, it was alleged that the bonds were defaulted on in 1841, were past due, and unpaid by the State of Mississippi. The Plaintiffs proposed that payment of the principal had not been made because of the repudiation on the bonds by the State and the prohibition against payment of the bonds enumerated in § 258 of the Mississippi Constitution.

¶3. The State, in lieu of an answer to the complaints, filed a Motion for Summary Judgment with exhibits, along with a supporting memorandum of law. There the State asserted that the suit was untimely and barred by the statute of limitations[1] or by laches; that the issues determined in ***David J. Barry, et al. v. Governor Kirk Fordice, et al.***, 814 F. Supp. 511(S.D. Miss. 1992), *aff'd*., 8 F.3d 1 (5th Cir. 1993), were entitled to a binding effect; that as a matter of federal law a Plaintiff cannot proceed on federal constitutional claims in state court where the action is against the State and has been found to be barred by a State's constitutional immunity.

¶4. The Plaintiffs responded by alleging that the suit was not one based on federal constitutional claims against the State of Mississippi, but merely a contract action. The Plaintiffs further allege that § 258 of the Mississippi Constitution effectively barred them from collecting on these bonds so that the statute of limitations was tolled under Miss. Code Ann. § 15-1-57.

¶5. The chancellor, in his Final Judgment entered November 19, 1993, granted the State's Motion for Summary Judgment on the ground that § 258 of the Miss. Const. of 1890 was void *ab initio* as violative of the United States Constitution § 10, ¶ 1. Consequently, the actions were time barred by the statute of limitations, and he dismissed the complaints with prejudice. Later in an amended judgment, the chancellor reiterated his dismissal of the suits based on the statute of limitations, but then continued by declaring that § 258 of the Miss. Const. was unconstitutional.

¶6. The plaintiffs have appealed the chancellor's grant of summary judgment in favor of the State based on the statute of limitations. The State has filed a cross-appeal as to the portion of the amended judgment declaring § 258 of the Miss. Const. unconstitutional.

## STATEMENT OF THE FACTS

¶7. The origin of this case is in the mid-nineteenth century when in 1830 the Mississippi Legislature chartered the commercial banking establishment called the Planters' Bank. The unusual feature of the bank was its financing. It was to be practically a state-owned bank, for $2,000,000 of its $3,000,000 of capital would be subscribed by the state government.

¶8. The Planters' Bank bonds were issued in 1831 and in 1833. The Legislature in response to a demand for more banking institutions chartered the Union Bank in 1838 with bonds issued that same year. In 1841, there was a default in interest on both the Planters' and Union Bank bonds. The Union Bank bonds were repudiated by the Governor of Mississippi in 1842, and the Planters' Bank bonds were repudiated under a referendum vote of the people in 1853. The Union Bank bonds matured as to the principal in 1850 and 1858. The Planters' Bank bonds matured as to principal in 1861 and 1866.

¶9. A statute of limitations was enacted in 1873 that dealt with actions to collect debt owing on bonds. Chapter 26, Mississippi Laws of 1873, effective April 19, 1973, provided in pertinent part that "all actions of debt. . .founded upon any bond, obligation, or contract, under seal. . .shall be commenced within seven years after the cause of said action, and not after." Section 2685, Code of 1880 (now codified as § 15-1-3), provided that the completion of the limitations period "shall defeat and extinguish the right as well as the remedy."

¶10. These suits were filed in the Chancery Court in July of 1993, which was 152 years after the default in interest, 141 years after the vote by the people to repudiate the Planters' Bank bonds, and 126 years after the last bonds reached maturity. This was also 120 years after a 7-year statute of limitations went into effect which would have extinguished any possible right on the bonds in 1880 at the latest.

¶11. Section 258 of the Mississippi Constitution of 1890, which provided that the State should not "assume, redeem, secure or pay any indebtedness or pretended indebtedness" on the bonds, was approved as an amendment of the previous Constitution by the people in November 1875, to go into effect in January of 1876. The default on the bonds had in reality occurred nearly thirty years earlier, and this action was brought in the Chancery Court 117 years after the Constitution was ratified.

¶12. However, the Appellants claim that prior to 1873, in 1857, Mississippi enacted a "savings statute" providing that the statute of limitations does not run during the period when a person is prohibited by law from commencing or prosecuting an action or remedy. Miss. Code Ann. § 15-1-57. Relying on this "savings statute", the Appellants argue that they were prohibited from bringing suit against the State to enforce payment on the bonds because of Section 258 of the Mississippi Constitution of 1890. Hence, the statute of limitations had not run, and they were not time barred from bringing suit.

¶13. The State filed a Motion for Summary Judgment and for a Judgment on the Pleadings in lieu of

filing an answer to the complaint. The State asserted the present claims were barred as *res judicata* as a result of the disposition in the earlier federal suit of **Barry v. Fordice**, *supra*, that was dismissed because of the Eleventh Amendment bar to suits against a State. Further, the State claimed that all possible statute of limitations had run and/or in the alternative, that the Appellants were barred from now bringing suit by the doctrine of laches.

¶14. The chancellor ruled that the acts of repudiation, including the vote by the people to deny payment and the amendment by the Legislature that was later incorporated into the Mississippi Constitution of 1890, were violative of the United States Constitution with regards to impairments of contracts. He then found the statute of limitations had run in favor of the State during the period in which the acts of repudiation had taken place. Thus, any suit was indeed time barred.

¶15. From that decision the Appellants have appealed to this Court contending that the ruling of the court below violates the statutory tolling law of this State, established principles of estoppel, fundamental due process protections of the United States Constitution, and the 1794 "Jay Treaty" between Great Britain and the United States, and triggers the running of the statute of limitations against the American bondholders when a condition precedent to the running of the limitations period had not occurred.

¶16. The Appellants enumerated specifically eight issues on appeal. In order to be clear and concise, the issues have been briefly restated below:

> **I. WHETHER THE PROVISION IN THE MISSISSIPPI CONSTITUTION PROHIBITING PAYMENT OF THE UNION BANK AND PLANTERS' BANK BONDS TOLLED THE STATUTE OF LIMITATIONS BY VIRTUE OF §15-1-57 OF THE MISS. CODE ANN.**

> **II. WHETHER THE STATE OF MISSISSIPPI AND ITS OFFICIALS ARE EQUITABLY ESTOPPED FROM ASSERTING THE STATUTE OF LIMITATIONS HAS RUN.**

> **III. WHETHER THE BARRING OF CLAIMS ON THE BONDS BY THE STATUTE OF LIMITATIONS VIOLATES THE BONDHOLDERS' DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

> **IV. WHETHER THE STATUTE OF LIMITATIONS WOULD RUN AGAINST THE MISSISSIPPI BONDHOLDERS WHEN THEY HAVE NEVER MADE DEMAND OR HAD A RIGHT TO MAKE DEMAND FOR PAYMENT UPON A STATE OFFICER AUTHORIZED TO ALLOW OR DISALLOW PAYMENT OF THE BONDS.**

> **V. WHETHER, AS TO THE BRITISH BONDHOLDERS, THE 1794 "JAY TREATY" BETWEEN GREAT BRITAIN AND THE UNITED STATES PROHIBITS THE NON-PAYMENT OF THE BONDS.**

¶17. The State in its cross-appeal argues that the chancellor erred in his holding in the following ways:

> **I. WHETHER HAVING HELD THAT THE APPELLANTS' CLAIMS WERE**

**BARRED BECAUSE OF THE STATUTE OF LIMITATIONS, THE CHANCELLOR ERRED BY ISSUING AN ADVISORY OPINION HOLDING SECTION 258 OF THE MISSISSIPPI CONSTITUTION TO BE UNCONSTITUTIONAL.**

**II. WHETHER THE CHANCELLOR ERRED IN HIS DETERMINATION OF THE CONSTITUTIONALITY OF SECTION 258 AS IT WAS NOT PROPERLY BEFORE THE COURT ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.**

**III. WHETHER, AS AN ALTERNATIVE FOR AFFIRMANCE, THESE SUITS COULD NOT BE BROUGHT BASED ON FEDERAL CONSTITUTIONAL CLAIMS AGAINST THE STATE OR STATE OFFICIALS.**

## DISCUSSION OF ISSUES

**I. WHETHER THE PROVISION IN THE MISSISSIPPI CONSTITUTION PROHIBITING PAYMENT OF THE UNION BANK AND PLANTERS' BANK BONDS TOLLED THE STATUTE OF LIMITATIONS BY VIRTUE OF §15-1-57 OF THE MISS. CODE ANN.**

¶**18.** The State of Mississippi has pled the statue of limitations applicable to bonded indebtedness effective in this State by legislative enactment from and after April 14, 1873. The trial court found that these consolidated causes were barred by the statute of limitations. The statute interposed by the State provided a seven year limitation within which to bring the action. Prior to that date, there was no statute of limitations applicable to the bonds. There are policy reasons why statute of limitations are enacted. The United States Supreme Court in *United States v. Marion*, 404 U.S. 307 (1971), stated that statute of limitations

> represent a public policy about the privilege to litigate. . .and their underlying rationale is to encourage promptness in the bringing of actions. . . .[T]hey promote justice by preventing surprises through the revival of claims that have been allowed to slumber. . . .[T]hey are primarily designed to assure fairness to defendants. . . .[C]ourts ought to be relieved of the burden of trying state claims when a plaintiff has slept on his rights.

*Marion*, 404 U.S. at 322, n. 14 (internal quotations and citations omitted).

¶19. It is the Appellants' contention that from 1857 there has been a "saving statute" which suspended the operation of the statute of limitations under the circumstances of this case. That statute first appeared as Art. 26 of Ch. 57, 1857 Statute of Laws of the State of Mississippi. This enactment has been brought forward to the present day Miss. Code Ann. § 15-1-57, which reads as follows:

> When any person shall be prohibited by law, or restrained or enjoined by the order, decree, or process of any court in this state from commencing or prosecuting any action or remedy, the time during which such person shall be prohibited, enjoined or restrained, shall not be computed as any part of the period of time limited by this chapter for the commencement of such action.

¶20. The parties in these cases on appeal were never prohibited from bringing suit. The section of the

Mississippi Constitution that allegedly prohibited the appellants from bringing suit is Section 258 and reads as follows:

> The credit of the state shall not be pledged or loaned in aid of any person, association, or corporation; and the state shall not become a stockholder in any corporation or association, nor assume, redeem, secure, or pay any indebtedness or pretended indebtedness alleged to be due to by the state of Mississippi the same as owners, holders, or assignees of any bond or bonds, now generally known as "Union Bank" bonds and "Planters' Bank" bonds.

Miss. Const. art. 14, §258. Nothing in this above quoted enactment prohibits any bondholder from bringing suit. The plain language of the enactment only prohibited the State from making payment on the bonds if a claim was, in fact, made. No claim was made on the bonds until 1993, well past any statute of limitations applicable to bond indebtedness.

¶21. In *White v. White*, 601 So. 2d 864, 865 (Miss. 1992), a woman who was battered by her then-husband sued him in tort two years after the incident took place. The circuit court dismissed her action as barred by the one year statute of limitations. The wife claimed that she was prohibited from bringing suit because of interspousal tort immunity, then recognized in this state. This immunity was later abolished by this Court in *Burns v. Burns*, 518 So. 2d 1205 (Miss. 1988), subsequent to the running of the one year statute of limitations for assault and battery. This Court held that the savings clause in § 15-1-57 of Miss. Code Ann. only applies where a plaintiff is personally prohibited or restrained from bringing suit. It speaks in terms of a person being prohibited by law from bringing suit. *White*, 601 So. 2d at 865. The statute was enacted to protect those who are disabled to sue at all, not a rule that says they will lose if they bring suit. *Id.*

¶22. The Appellants assert that Section 258 prohibited them from bringing suit when in reality it prohibited payment of any claim that was made. This Court in *White v. White*, determined that where there is a claim, it must be brought, if at all, within the applicable limitations period, regardless of whether the current substantive law permits recovery. *Id.* There can be no tolling of the statute of limitations unless the person is personally prohibited from bringing suit. This Court holds that the Appellant bondholders were not personally prohibited from filing suit at the time their claim accrued. If they were prohibited from bringing suit in 1875, they would have been prohibited from filing suit in 1993, for the law, prior to this suit, has not changed. The Court finds that the section in the Mississippi Constitution did not prohibit the bondholders from bringing suit, but prohibited the State from making any payment on the underlying debt. The decision in *White* explained that there was no savings or tolling of the statute of limitations unless an individual is personally prohibited or restrained from commencing or prosecuting his claim; the fact that he cannot recover because of an applicable defense or immunity does not toll the running of the statute of limitations. *White*, 601 So. 2d at 865.

¶23. The time period with which to bring suit began to run in 1873 when the Legislature enacted a seven year statute of limitations applicable to bonds. No suit was brought within that seven year time frame, so that any subsequent suit is time barred and should not be heard. This issue is without merit.

### II. WHETHER THE STATE OF MISSISSIPPI AND ITS OFFICIALS ARE EQUITABLY ESTOPPED FROM ASSERTING THE STATUTE OF LIMITATIONS HAS RUN.

¶24. The Appellants next contend that the State is equitably estopped from asserting a claim is barred by the statute of limitations where the State's conduct induced the plaintiff[s] to refrain from exercising their claim. *Rhodes v. Guiberson Oil Tools Division*, 927 F. 2d 876, 878 (5th Cir. 1991). They assert that the doctrine of equitable estoppel is premised on "the maxim that no man may take advantage of his wrong." *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 232 (1959).

> The principle is that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage. And although the cases to which this principle is to be applied are not as well defined as could be wished, the general doctrine is well understood and is applied by courts of law as well as equity where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim.

*Id.* at 234.

¶25. The Appellants claim the State is equitably estopped from asserting the statute of limitations against their claims. In 1875, with five years remaining on the statute of limitations to sue the State for payment of the Union Bank and Planters' Bank bonds, the State procured passage of a constitutional amendment prohibiting payment of these bonds. Neither the Appellants, nor their predecessors, filed suit as a result of this prohibition. Further, the Appellants allege that because the State deterred any litigation attempts to collect on these bonds with the passage of the amendment, it cannot now invoke the statute of limitations when the lower court ruled that the amendment was unconstitutional.

¶26. While articulating the correct explanation of the doctrine of equitable estoppel, the Appellants' argument is misplaced. The State did not induce the bondholders to abstain from filing suit to protect their rights and collect the duly owed debt. There is nothing in Section 258 of the Mississippi Constitution that prohibited the bondholders from filing suit to protect their claim. The language of that section merely prohibited payment of the debt if a claim is made. In *White*, this Court held that the savings statute contemplates one disabled to sue at all, not a rule of law that says they will lose if they do. *White*, 601 So. 2d at 865. The bondholders were not personally prohibited from suing, only from collecting had they sued within the statutory time frame.

¶27. The constitutionality, or lack thereof, of Section 258 of the Mississippi Constitution should have been attacked within the statutory time frame allowed by Chapter XXVI of the Laws of Mississippi of 1873. The bondholder's cause of action came into being at the time the interest came due on the bonds and the State failed to pay. No suit was brought. The next claim came into existence when the State failed to pay when the debt came due on the bonds themselves. Again, no suit was brought. The seven-year statute of limitations went into effect in 1873, and no suit was filed to protect the claims and rights of the bondholders. "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984). The bondholders did not file suit to protect their rights within the statutory time period. Therefore, this Court will not allow them to use equitable principles to circumvent their lack of diligence in bringing their suit over one hundred years after the statute of limitations has run. Contrary to what the Appellants suggest, there was no active misleading of the bondholders by the

State by enacting section 258 of the Mississippi Constitution. If there was any doubt as to the meaning or constitutionality of the above mentioned section, a claim should have been made within the statutory time frame in order to preserve the bondholders' rights to any payment that was justly owed to them by the State. This issue is without merit.

### III. WHETHER THE BARRING OF CLAIMS ON THE BONDS BY THE STATUTE OF LIMITATIONS VIOLATES THE BONDHOLDERS' DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

¶28. The Appellants next argue to this Court that the State violated their due process rights under the United States Constitution by passing an amendment to the Mississippi Constitution of 1869 in 1875. This amendment prohibited payment on the Union Bank and Planters' Bank bonds while the bondholders had five years remaining under the statute of limitations in which to enforce their right to payment on the bonds by the State of Mississippi. The Appellants assert that a state cannot take away an existing right by shortening the statute of limitations to a time that has already run with respect to that right. *Chapman v. Board of County Commissioners*, 107 U.S. 348, 358 (1883). Further, the Appellants cite an earlier decision by this Court, where it held:

> A statute of limitations, which attempts to bar a debt without giving a reasonable time within which the right may be preserved, is violative of the contract clause (article I § 10, cl. 1), as well as the due process clause of the Federal Constitution (Amendment 14), and of the like provisions in our state Constitution.

*Bell v. Union & Planters' Bank & Trust Co.*, 130 So. 486, 487 (Miss. 1930).

¶29. While correctly stating the rule of law, the appellants again misread the amendment to the Mississippi Constitution. The amendment is void of any language that prohibited the bondholders from bringing suit to protect their rights or to attack the constitutionality of such an amendment. Although the amendment was passed with five years remaining in which to bring suit, it did not prohibit the bondholders from so doing.

¶30. Alternatively, if the amendment did prohibit the bondholders from bringing suit, the bondholders come before this Court stating the State did not give reasonable time to preserve their rights. This argument, too, is without merit. The bondholders were placed on notice that the State was repudiating the bonds in 1841 when the governor made his recommendation that the State stop payment. Further notice was given when the Legislature, in 1842, passed a resolution that repudiated the Union bonds. The Legislature, in 1852, submitted a referendum to the people of Mississippi for a vote to be taxed to pay the bonds. This vote defeated a proposed tax to pay the bonds. In 1875 the governor signed a bill proposing an amendment to the Constitution of Mississippi to repudiate the bonds. In November of that same year during the general election, an amendment was adopted that did repudiate the bonds. In November of 1890, the same amendment was incorporated as section 258 of the Mississippi Constitution of 1890. At no time during these acts by the State, which should have put the bondholders on actual notice, but at the very least constructive notice, did the bondholders bring suit. It was not until 1993, one hundred and twenty years after the seven-year statute of limitations went into effect, before the bondholders asserted their rights in claiming payment owed by the State.

¶31. The bondholders assert that traditional notions of fair play and substantial justice were violated when the State passed the amendment that prohibited payment on the bonds. Thus, violating their due process rights. The Court finds this argument without merit. The bondholders knew of the State's actions and of the statutory time period. The bondholders failed to bring suit because they read the amendment as prohibiting such a suit, while it only prohibited payment. The bondholders successfully filed suit in 1993 under the same laws in effect at the time the statute of limitations expired. If they were prohibited in 1875, likewise they were prohibited in 1993. The bondholders were not denied their day in court in 1993, nor would they have been in 1875 or 1880. The statute of limitations expired in 1880. The bondholders' due process rights were not violated by the passing of the amendment to the Constitution of Mississippi of 1869 in 1875, which was later Section 258 of the Mississippi Constitution of 1890.

### IV. WHETHER THE STATUTE OF LIMITATIONS WOULD RUN AGAINST THE MISSISSIPPI BONDHOLDERS WHEN THEY HAVE NEVER MADE DEMAND OR HAD A RIGHT TO MAKE DEMAND FOR PAYMENT UPON A STATE OFFICER AUTHORIZED TO ALLOW OR DISALLOW PAYMENT OF THE BONDS.

¶**32.** The bondholders claim that from the date of maturity of these bonds until 1871, actions against the State of Mississippi were not authorized. In 1871, a statue was enacted authorizing suits against the State, but only after demand had been made of the Auditor of Public Accounts. § 1573, Code of 1871; Miss. Code Ann § 11-45-1 (1972). According to the bondholders, demand against the Auditor of Public Accounts was a condition precedent before the statute of limitations could begin to run. The Mississippi Legislature passed as part of the Codes of 1892, what eventually became § 15-1-51 of Miss. Code Ann. (1972), the following:

> The statutes of limitations shall begin to run in favor of the state, the counties, and the municipal corporations at the time when the plaintiff first had the right to demand payment of the officer or board authorized to allow or disallow the claim sued upon.

*Id.*; *See* **Grenada County v. Nason**, 165 So. 811, 812 (Miss. 1936).

¶33. The bondholders claim that the statute of limitations could not run prior to 1892 because they did not make a demand for payment. Nor did the statute of limitations run subsequent to 1892 because the present-day § 15-1-51 stated the plaintiffs first had to make a demand for payment of the officer authorized to allow or disallow the claim sued upon.

¶34. The bondholders argue that when the State amended its constitution to specifically prohibit payment of any indebtedness claimed to be due on the Union Bank and Planters' Bank bonds, there was no state officer authorized to allow or disallow payment on the bonds. Further, because there was no state officer authorized to allow or disallow payment, the bondholders, who had never made demand up to that time, did not have "the right" to demand payment of any state officer "authorized to allow or disallow" payment. The bondholders claim that not until December 16, 1993, was there a state officer authorized to allow or disallow payment of the bonds. That was the date the chancellor declared Section 258 of the Mississippi Constitution of 1890 to be unconstitutional as an impairment of contracts in violation of Art. I, § 10 of the United States Constitution.

¶35. However, the bondholders fail to carefully and fully read § 15-1-51. The language clearly states

that demand must be made when "the plaintiff first had the right to demand payment of the officer or board authorized to allow or *disallow* the claim sued upon." *Id.* (emphasis added). At the time the rights of the bondholders accrued (i.e. when the State repudiated the bonds), they had at the latest seven years from 1873 in which to make such a demand or bring suit to protect those rights. No demand or suit was filed when the plaintiff[s] first had the right to make such a demand. Also, the bondholders seek refuge in the fact that no officer was authorized to allow their claims if the demand was made. The statute clearly states that demand must be made on an officer who is authorized to allow or *disallow* their claim. The bondholders fail to comprehend the entire statute. They want the statute to be tolled because the amendment to the Mississippi Constitution authorized the officer to disallow their claim. This Court holds that the statute of limitations began to run in favor of the state at the time when the plaintiffs first had a *right* to make demand on the officer authorized by the state to allow or disallow their claim. In other words, the statute of limitations began running in 1873 and expired seven years later after no demand was made. Therefore, this argument is without merit.

### V. WHETHER, AS TO THE BRITISH BONDHOLDERS, THE 1794 "JAY TREATY" BETWEEN GREAT BRITAIN AND THE UNITED STATES PROHIBITS THE NON-PAYMENT OF THE BONDS.

¶36. The bondholders call this Court's attention to the November 19, 1794, Treaty of Amity, Commerce and Navigation between the United States of America and Great Britain. This treaty is commonly referred to as the "Jay Treaty". The treaty has a provision, Article 28, which declared that it would remain in effect in perpetuity. Article 10 of the Treaty deals with how investments by individuals of one nation in the public debts of the other nation were to be protected.

> Neither the debts due from individuals of the one nation to individuals of the other, nor shares, nor monies which they may have in the public funds, or in the public or private banks, shall ever in any event of war or national differences be sequestered or confiscated it being unjust and impolitic that debts and engagements contracted and made by individuals, having confidence in each other and in their respective governments, should ever be destroyed or impaired by national authority on account of national differences and discontents.

8 Stat. 116, 122.

¶37. The bondholders assert that the Jay Treaty survived the War of 1812 with Great Britain and is still in full force and effect. Their authority is *United States v. Karnuth*, 24 F.2d 649 (2d Cir. 1928); however, the bondholders failed to follow the subsequent history of this case to the United States Supreme Court where the Second Circuit's holding was reversed. *Karnuth v. United States*, 279 U.S. 231 (1929). It was in this case that the United States Supreme Court discussed the possibilities of the Jay Treaty surviving the War of 1812.

> The effect of war upon treaties is a subject in respect of which there are widely divergent opinions. There seems to be a common agreement that at least the following treaty obligations remain in force: Stipulations in respect of what shall be done in a state of war; treaties cession, boundary, and the like; provisions giving the right to citizens or subjects of one of the high contracting powers to continue to hold and transmit land in the territory of the other; and generally, provisions which represent completed acts. On the other hand, **treaties of amity, or alliance, and the like, having a political character, the object of which 'is to promote**

> **relations of harmony between nation and nation,' are generally regarded as belonging to the class of treaty stipulations that are *absolutely* annulled by war.**

*Id.* at 236, (citations omitted) (emphasis added).

¶38. The Court notes that the "contracting powers" mentioned in the above quotation refers to the powers that entered into the treaty (i.e. the United States of America and Great Britain). This would mean that persons of either nation could still contract to buy or sell land in compliance with a treaty. However, the latter portion of the quote specifies that "treaties of amity, or alliance, and the like" would be annulled by war. The Jay Treaty by its very title of **Treaty of Amity**, Commerce and Navigation suggests that it was of the type contemplated to be overturned by a war.

¶39. Notwithstanding the above discussion, the Supreme Court of the United States discussed other alternatives to effects by a war on a treaty. There may be treaties that contemplate a permanent arrangement of territorial, and other national rights, or which, in their terms, are meant to provide for the event of an intervening war, it would be against just interpretations to hold them extinguished by the event of war. *Id.* at 238. The Jay Treaty provided in Article 28 that the first ten articles shall be permanent. *Id.* at 242. By the language employed in Article 10 and Article 28, one could interpret the treaty to contemplate events of war on a permanent basis.

¶40. The language of Article 10 states no monies "shall ever in any event of **war or national differences be sequestered or confiscated.**" There was no war prior, during, or subsequent to the issuing of the bonds or the repudiation of the bonds by the State. Neither was there a national difference between the United States or Great Britain during the time frame in which the bonds were issued or repudiated. The treaty addressed actions by either nation that would take place during a war, national difference, or other conflict of some kind. The repudiation by the State on the bonds was not a result of war, national difference, or conflict. It was simply a breach of the contractual agreement between the State of Mississippi and the bondholders.

¶41. This Court finds the Jay Treaty had no application to the case sub judice, which means the repudiation by the State on payment of the bonds was nothing more than a breach of contract. An action for which would have had to have been brought by the bondholders within the statutory seven year time frame in order to preserve their rights. No action was brought within the time limit; therefore, the action is barred by the statute of limitations.

¶42. Alternatively, the doctrine of laches prohibits the bondholders from presently asserting their rights after they accrued over one hundred years ago. Although the chancellor ruled on other grounds, the State in the lower court raised the doctrine of laches as having barred the bondholders from bringing suit after allowing over one hundred years to pass from when their rights accrued.

¶43. Laches is an old doctrine that was laid down as a rule by this Court in ***Comans v. Tapley***, 57 So. 567 (Miss. 1912), where Justice Smith on suggestion of error wrote:

> The doctrine of laches is founded principally upon the equity maxims 'He who seeks equity must do equity,' 'He who comes into equity must come with clean hands,' and 'The laws serve the vigilant, and not those who sleep over their rights.'

***

Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right then be enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right.

*Id.*; (internal citations omitted).

¶44. Later this Court further explained the doctrine of laches in ***Marks v. Toney***, 18 So. 2d 452, 453 (Miss. 1944), holding:

"It is a rule peculiar to and inherent in courts of equity; and it applies where it would be practically unjust to give a remedy, either because the appellant has by his conduct done that which might be fairly regarded as equivalent to a waiver of his remedy, or where by his conduct and neglect he has, though perhaps not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were to be afterwards asserted. A long or protected delay in the prosecution of rights is presumed to have produced the situation last mentioned and equity looks with so little favor upon such prosecutions that it will not entertain them, although no express statute of limitations is available,--unless facts are shown which will rebut the presumption of injustice arising out of the apparently undue delay, or which will excuse the same."

*Id.*, *quoting* Griffith, ***Chancery Practice***, Sec. 33.

¶45. The bondholders' right to payment accrued at the time the state stopped payment on the bonds. The bondholders failed to bring their claim in a timely fashion (within the statute of limitations) and have allowed the amount owing on the debt accumulate to a very substantial sum. The sum is debatable, depending on how the interest is calculated, but is somewhere in the neighborhood of $60,000,000. If the bondholders had asserted their rights earlier, the state could have paid the bonds or at least worked out a payment schedule that would not have adversely affected the state treasury. As it stands now, if the bondholders are allowed to collect approximately $60,000,000, the financial hardship to the state would be devastating. This is the type of hardship that was contemplated by this Court when the doctrine of laches was adopted.

¶46. This Court holds that the bondholders have slumbered on their rights and failed to assert them in a timely fashion. Even under the Jay Treaty, if it is found applicable, the bondholders, by being slothful, have placed the State in an unreasonable position by now bringing suit. The argument that the Jay Treaty bars non-payment on the bonds is without merit.

## CROSS-APPEAL

### I. WHETHER HAVING HELD THAT THE APPELLANTS' CLAIMS WERE BARRED BECAUSE OF THE STATUTE OF LIMITATIONS, THE CHANCELLOR

**ERRED BY ISSUING AN ADVISORY OPINION HOLDING SECTION 258 OF THE MISSISSIPPI CONSTITUTION TO BE UNCONSTITUTIONAL.**

¶47. The Appellee, State of Mississippi, files its cross-appeal as a result of the chancellor having ruled that Section 258 of the Mississippi Constitution is unconstitutional as violative of the "contract clause" of the United States Constitution. The State complains that once the chancellor entered a judgment that the statute of limitations affirmatively barred the action the matter was ended. The State asserts that the constitutionality of Section 258 was a "merits" issue not briefed or properly before the lower court on the State's Motion for Summary Judgment.

¶48. The State cites several cases of this Court for the position that the constitutionality of state enactments are not to be reached if the case can be resolved upon other grounds. *Williams v. Stevens*, 390 So. 2d 1012, 1014 (Miss. 1980) ("Established law is that constitutional issues are not reached if cases can be resolved upon other bases"). If it is not necessary to rule upon the constitutionality of a statute, it is necessary that a court not rule on it. *Western Line Consolidated School District, et al. v. Greenville Municipal Separate School District*, 433 So. 2d 954, 957 (Miss.1983). The State argues that the finding by the chancellor that the statute of limitations had run was dispositive of the case.

¶49. The bondholders argue that the finding that Section 258 of the Mississippi Constitution unconstitutional, as it violated the "contract clause" of the United States Constitution, was a necessary prerequisite to finding that the statute of limitations had ran against the bondholders. The chancellor in his opinion noted that the provision involved first was that of the "contract clause" of the United States Constitution and not the statute of limitations.

> The constitutional provision involved first and foremost is Section 10, paragraph 1, of the United States Constitution, which says, among other things: "No state shall enter into or make any law impairing the obligation of contracts." That is the key language of the United States Constitution that the Court finds to be controlling in this case. So when the State of Mississippi enacted Section 258 of its Constitution, which says, among other things, that it shall not "pay any indebtedness or pretended indebtedness alleged to be due by the State of Mississippi to any person, association, or corporation whatsoever, claiming the same as owners, holders, or assignees of any bond or bonds, now generally known as 'Union Bank' bonds and 'Planters' Bank' bonds," it was in conflict with the above section of the federal constitution.
>
> That section (258), counsel for both sides concede, specifically applied to the bonds in question here, and, without any equivocation under numerous authorities, that provision would be contrary to the United States Constitution prohibiting any impairment of contracts and, therefore, would be unconstitutional.

¶50. The chancellor determined that Section 258 was unconstitutional *ab initio*, because it was in conflict with the United States Constitution. Regardless of whether it was in conflict or not, this Court holds that the statute of limitations began running at the time the right to collect the interest and debt duly owed on the bonds accrued. Thus, the time bar of the claim was dispositive, and it was not necessary for the chancellor to go further and hold Section 258 unconstitutional.

¶51. Secondly, the State asserts that the determination by the chancellor of the constitutionality of

Section 258 was an impermissible advisory opinion on an issue that had become moot. The State claims that once the statute of limitations had run, and the chancellor dismissed the complaints, any underlying debt was extinguished under Mississippi law. *Proctor v. Hart*, 16 So. 595; Miss. Code Ann. § 15-1-3 (1972).

¶52. The bondholders respond that "the interpretation of the constitution becomes the duty of the judicial department when the meaning of that supreme document is put in issue." *Alexander v. State by and through Allain*, 441 So. 2d 1329, 1333 (Miss. 1983). Their assertion is that the chancellor had to make a determination on the constitutionality of Section 258 of the Mississippi Constitution because it was an issue presented by the Plaintiff's complaint and the affirmative defenses of the statute of limitations raised by the defendants. Further, the bondholders state that by holding that their claims were barred by the statute of limitations, the chancellor was exercising his judicial duty in holding Section 258 to be unconstitutional.

¶53. This Court finds that it was impermissible for the chancellor to make a determination of the constitutionality of Section 258 when the running of the statute of limitations was dispositive in granting the State's Motion for Summary Judgment. Therefore, the decision by the chancellor that Section 258 of the Mississippi Constitution is reversed and rendered.

### II. WHETHER THE CHANCELLOR ERRED IN HIS DETERMINATION OF THE CONSTITUTIONALITY OF SECTION 258 AS IT WAS NOT PROPERLY BEFORE THE COURT ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

¶54. The State next argues that it did not raise the constitutionality of Section 258 before the lower court on its Motion for Summary Judgment. There were two issues raised: that the statute of limitations had run, and also that a state court could not entertain a federal cause of action, based on the alleged federal unconstitutionality of a law, against the State or State officials, where a federal court had refused to entertain the case. The State complains that it was not proper for the lower court to "jump the gun" and decide a substantive issue of law prematurely and without full briefing.

¶55. On a motion for summary judgment the chancellor may look beyond the pleadings of the parties. The rule should operate to prevent the system of extremely simple pleadings from shielding the claimants without real claims or defendants without real defenses; in addition to providing an effective means of summary action in clear cases, it serves as an instrument of discovery in calling forth quickly the disclosure on the merits of either a claim or defense on pain of loss of the case for failure to do so. Comments to M. R. C. P. 56. The chancellor was merely looking at all the evidence that was presented before him in making his determination as to whether the statute of limitations had run. Again, as stated above, the chancellor was in error to find section 258 of the Mississippi Constitution void *ab initio* because the running of the statute of limitations was dispositive on granting the State's Motion for Summary Judgment.

### III. WHETHER, AS AN ALTERNATIVE FOR AFFIRMANCE, THESE SUITS COULD NOT BE BROUGHT BASED ON FEDERAL CONSTITUTIONAL CLAIMS AGAINST THE STATE OR STATE OFFICIALS.

¶56. Finally, the State claims that as a matter of controlling federal law, these complaints in Chancery Court, based on identical federal claims which a federal district court held were barred from federal

court, could not be entertained in state court. The State contends that as a matter of controlling federal law the plaintiffs cannot proceed on federal § 1983 constitutional claims in state court where the action seeking monetary relief is against the state, as the real party in interest, or state officials in their official capacities, such that the suit would be barred by the immunity granted by the Eleventh Amendment to the United States Constitution if it were brought in federal court. ***Will v. Michigan Department of State Police***, 491 U.S. 58 (1989).

¶57. The bondholders respond to the State by asserting that their cause of action was not one under § 1983 for damages for deprivations for Plaintiff's constitutional rights, so that ***Will*** is inappropriately cited by the State. The bondholders claim that their cause of action is a simple breach of contract seeking payment on bonds issued by the State of Mississippi. The Plaintiffs were entitled to bring their suit for breach of contract against the State. ***Mississippi State Department of Public Welfare v. Howie***, 449 So. 2d 772, 776-77 (Miss. 1984); ***Cig Contractors v. Mississippi State Building Commission***, 399 So. 2d 1352, 1355 (Miss. 1981). This Court has held that:

> [t]he general rule is that when the legislature authorizes the State's entry into a contract, the State necessarily waives its immunity from suit for a breach of such contract. Where the state has lawfully entered into a business contract with an individual, the obligations and duties of the contract should be mutually binding and reciprocal. There is no mutuality of fairness where a state or county can enter into an advantageous contract and accept its benefits but refuse to perform its obligations.

449 So. 2d at 776-77; 399 So. 2d at 1355.

¶58. The cause of action for breach of contract was recognized by this Court in the above decisions. This is distinguishable from the federal claims that the State alleges the bondholders are asserting. The bondholders were attempting to file suit against the State to enforce payment on the bonds issued by the State. However, the statute of limitations has run, and the claims are time barred.

¶59. The State also alleges that the state court claim by the bondholders is barred by *res judicata* because the federal court claim was barred by the Eleventh Amendment. It is clear from a review of ***Barry v. Fordice*** that the Eleventh Amendment was the sole reason for dismissal of the federal suit. *Res Judicata* only applies to questions actually litigated and determined by or essential to the judgment rendered in the former proceedings. ***Trammel v. State***, 622 So. 2d 1257, 1261 (Miss. 1993); *citing* ***Riley v. Moreland***, 537 So. 2d 1348, 1354 (Miss. 1989).

¶60. This Court holds that the claims brought in the Chancery Court were not federal claims as the State suggests, nor were they somehow barred by *res judicata* because of the decision by the federal district court. The claims filed in the Chancery Court were state law claims seeking damages for a breach of contract by the State on bonds it had issued to the bondholders. However, the claims were barred by the statute of limitations having expired.

## CONCLUSION

¶**61.** These claims were brought over one hundred years after the right to demand payment had accrued. The bondholders mistakenly read Section 258 to preclude suit to seek payment on the bonds, when in reality the section only prohibited payment. The seven-year statute of limitations

began to run in 1873 and expired in 1880. No demand was made until 1993 when the suit was filed in Chancery Court. The chancellor correctly held that the statute of limitations had run and the bondholders were barred from pursuing their claim. The determination that Section 258 of the Mississippi Constitution is unconstitutional was error because the running of the statute of limitations was dispositive in granting the State's Motion for Summary Judgment.

**¶62. AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, McRAE AND MILLS, JJ., CONCUR. BANKS AND SMITH, JJ., NOT PARTICIPATING.**

1. Attached to the Motion for Summary Judgment was a copy of Chapter XXVI of the Laws of Mississippi of 1873, which provides for a period of seven years from April 19, 1873, to bring suits on any bond.