Charles JEFFREY, Abe Jordan, Elijah Pious, Randolph Saito, Plaintiffs,

v.

Marvin O. ST. CLAIR, Administrator, Hawaii State Hospital, in his official capacity; Antonia S. Austria, M.D., Medical Director of Hawaii State Hospital; John Doe and Jane Doe, employees of Hawaii State Hospital, Defendants.

CV. No. 96–00453 DAE.

United States District Court,
D. Hawai'i.

July 19, 1996.

David T. Rammler, Honolulu, HI, for plaintiffs.

Ann Andreas, Office of the Attorney General–State of Hawaii, Honolulu, HI, for defendants Marvin O. St. Clair and Antonia S. Austria, M.D.

### *ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION*

DAVID ALAN EZRA, District Judge.

The court heard Plaintiffs' Motion on July 16, 1996. David T. Rammler, Esq., appeared on behalf of Plaintiffs; Assistant Attorneys General Ann Andreas and Heidi M. Rian appeared on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, hearing testimony as well as the arguments of counsel, the court DENIES Plaintiffs' Motion for Preliminary Injunction.

### *BACKGROUND*

Plaintiffs Charles Jeffrey, Abe Jordan, Elijah Pious, and Randolph Saito ("Plaintiffs") are patients[1] at the Hawaii State Hospital ("HSH") and were being treated, until April

---

**1.** Plaintiffs were committed to the custody of the Director of Health after being acquitted of various criminal charges in Hawaii state courts. They are to remain in custody of the Director of Health until such time as the court determines that they are not dangerous or that their dangerousness can be controlled with proper treatment if they are living in the community.

12, 1996, in the experimental Anuenue Program which was run in the Cooke Building ("Cooke" or "Cooke Building"). The program made use of a more open residential setting to create a therapeutic environment for its patients. The mission of the Anuenue Program was to provide HSH patients optimal support, supervision, and care in the least restrictive institutional environment to allow for maximum self-determination and personal responsibility. Defendants' Opposition, Exh. H. Aspects of the program which Plaintiffs deem critical are the open nature of the building, the out-of-building and off-grounds day and evening therapy sessions, jobs and vocational rehabilitation, 24–hour access to dorm rooms, access to personal belongings, liberal access to showers for personal hygiene, later evening social interaction, T.V. lounge time, and a therapeutic milieu stressing independent responsibility for participation in all aspects of the program without staff coercion. The program was less restrictive than other forms of treatment and was designed to maximize the patients' ability to function independently in the community after release from HSH.

In October 1995, Defendants began to move forward with plans to close the Cooke Building because the building did not meet fire, life, and safety standards for patient residences. Plaintiffs allege that Defendants were aware that unless rules and programs on existing units were altered, the closure of Cooke would require some residents of Cooke to be moved to units that would not accommodate their treatment in the program. Beginning in January 1996, Plaintiffs were moved into the "E" building ("Unit E") but continued to participate in their program at Cooke which was modified into a day program. On April 12, 1996, all patients remaining in Cooke were transferred to Unit E and Cooke was padlocked.

Subsequent to the closure of Cooke, Plaintiffs allege that Defendants required them to adhere to Unit E policies and rules which were designed and intended for patients with different needs. The record indicates that Plaintiffs retained their own treatment schedules which were, for the most part and with minor exceptions, similar to their schedules when they lived in Cooke. There is little dispute that Unit E rules are more restrictive than the rules of the Cooke Building.

On May 13, 1996, Plaintiffs filed for a Temporary Restraining Order to prevent HSH from dismantling the Anuenue Program. Judge Samuel P. King denied that motion on May 15, 1996. The case was then reassigned to the undersigned judge. Plaintiffs separately filed the instant Motion for Preliminary Injunction to enjoin Defendants from dismantling the Anuenue Program.

## STANDARD OF REVIEW

In the Ninth Circuit the standard for issuing a temporary restraining order is the same as the standard for preliminary injunctions: the court must apply a "sliding scale" analysis in balancing the plaintiff's likelihood of success on the merits with the hardships that would be caused to the plaintiff, the defendant, or the public if the injunction were granted or denied. *Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir.1988). Thus, to obtain a preliminary injunction, the plaintiff must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions on the merits are raised and the balance of hardships tips sharply in its favor. *Id.* (citations omitted). "Serious questions are 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Senate of State of Calif. v. Mosbacher*, 968 F.2d 974, 977–78 (9th Cir. 1992) (quoting *Gilder v. PGA Tour Inc.*, 936 F.2d 417, 422 (9th Cir.1991) (citations omitted)). With respect to the injury requirement, "the party seeking the injunction must demonstrate that it will be exposed to some significant risk of irreparable injury.... A plaintiff must do more than merely allege imminent harm sufficient to establish standing, he or she must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Associated Gen. Contractors of Cal., Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991), *cert. denied*, 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992).

These formulations are not different tests but represent two points on a "single continuum," such that "[i]f the balance of harm tips decidedly toward the plaintiff, the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Venetie,* 856 F.2d at 1389 (citations omitted).

Finally, in cases involving the public interest, the court must also examine whether the public interest favors the plaintiff. *Fund for Animals v. Lujan,* 962 F.2d 1391, 1400 (9th Cir.1992) (citing *Caribbean Marine Services Co. v. Baldrige,* 844 F.2d 668, 674 (9th Cir. 1988); *Northern Alaska Environmental Center v. Hodel,* 803 F.2d 466, 471 (9th Cir. 1986)). "The grant ... of a motion for a preliminary injunction is within the discretion of the district court, and the order of the district court will be reversed only if the court relied on an erroneous legal premise or otherwise abused its discretion." *Senate of California v. Mosbacher,* 968 F.2d at 975 (internal quotation omitted).

## DISCUSSION

### I. Probability of Success on the Merits

Plaintiffs argue that they have a well-established right (1) to individualized treatment designed to improve their medical and psychiatric health and to facilitate their release from the hospital, and (2) to participation in designing such treatment. Plaintiffs contend that they are likely to win on the merits because they can show violations of (a) their due process rights, (b) this court's January 19, 1995 Stipulation and Order in *United States v. State of Hawaii,* Civ. No. 91–00137 DAE, (c) the American with Disabilities Act, and (d) the Hawaii Revised Statutes, Hawaii Administrative Rules, and HSH Policies and Procedures ("P & P").

### A. Due Process Rights

 Plaintiffs argue that they have a due process right to medical and psychiatric treatment which hastens their recovery and improves the possibility of their release. They maintain that unless they receive treatment which improves their mental health and enhances their ability to function in society, they will remain indefinitely in the custody of the state. At the hearing, Plaintiffs focused on the importance of the milieu as a component of their therapy. Plaintiffs pointed out that they never abused the freedom and privileges accorded them in the Anuenue Program or posed a threat to themselves or staff. They resist placement in the more controlled Unit E environment, arguing that it creates the appearance of medical regression which will damage their chances for future release.

Defendants disagree with Plaintiffs' contention that the care and treatment provided at Unit E violates Plaintiffs' due process rights. Defendants maintain that they have complied with the constitutional due process requirements set forth in *Youngberg v. Romeo,* 457 U.S. 307, 322–23, 102 S.Ct. 2452, 2461–62, 73 L.Ed.2d 28 (1982) by providing reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and minimally adequate training. Defendants urge the court to minimize judicial interference in the internal operations of HSH and to defer to the judgment of its qualified professionals especially since there is no evidence in the record to support Plaintiffs' claims that Unit E treatment is a departure from accepted professional judgment or treatment. *Id.*

 "Due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972). There is a delicate balance between the legitimate interests of the State and the rights of the involuntarily committed to reasonable conditions of safety and freedom and freedom from unreasonable restraints. While there are some minimum standards that must be followed,[2] in reality, the courts are duty-bound

---

2. "[T]he respondent is entitled to minimally adequate training. In this case, the minimally adequate training required by the Constitution is such training as may be reasonable in light of respondent's liberty interests in safety and freedom from unreasonable restraints." *Youngberg,* 457 U.S. at 322, 102 S.Ct. at 2461.

to make sure that professional judgment is exercised. *Youngberg,* 457 U.S. at 321, 102 S.Ct. at 2461. *"It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." Id.* (emphasis added). "The exact contours of relief should be left to the sound discretion of experts in the field." *Ohlinger v. Watson,* 652 F.2d 775, 780 (9th Cir.1981) (quoting *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)). Liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment. *Id.,* 457 U.S. at 323, 102 S.Ct. at 2462.

Here, Plaintiffs allege a due process violation for transfer from one residence building to another. Plaintiffs do not allege that the treatment program or the accommodations in Unit E violate the minimum standard of care.[3] Rather in their Complaint, Plaintiffs lament the loss of such "liberties" as unlimited access to their dorm rooms and the freedom to consume caffeinated beverages.

Plaintiffs testified that residents at Unit E have access to their room approximately 12 to 14 hours a day.[4] They also testified that Unit E requires more staff supervision for off-campus outings and also precludes fishing and camping trips. While it is clear that Plaintiffs have somewhat less freedom in their new accommodation, there is no evidence that the care or treatment at Unit E is substandard or a substantial departure from accepted professional judgment.[5] In fact, the record indicates that Plaintiffs in this case have continued to follow treatment schedules which are very similar, if not identical to the schedules developed for them when the Anuenue Program operated at Cooke. Plaintiffs testified that they still participate in occupational therapy, industrial therapy, and recreational therapy, including off-campus outings and family visits both on and off campus. *See also,* Decl. of Patricia A. Thielen, attached to Defendants' Opposition, ¶ 26. Furthermore, Unit E has accommodated Plaintiffs' special needs.[6] Finally the court notes that the goals of Unit E are similar in that both programs strive to reintegrate patients into the community. *See* Defendants' Opposition, Exh. H & I.

■ Based on these facts, the court is not in a position to enjoin the transfer of patients from one professionally-accepted treatment program to another. The record establishes unequivocally that each Plaintiff has received essentially the same level of psychiatric care and access to the clinical programs. They are free from bodily restraints and in fact, still enjoy conjugal visits, off-campus outings, and family visits both on and off campus. Although they have less access to their dorm rooms and more staff members accompanying them on outings, there is no indication that such restrictions are unreasonable.[7] The Constitution does not guarantee Plaintiffs the same degree of contemplative privacy or freedom that they enjoyed in the An-

3. To the contrary, the record indicates that Plaintiffs are continuing their own treatment plan as established under the Anuenue Program. Plaintiffs testified that their schedules and their therapy programs are the same as when they were in the Anuenue Program.

4. Charles Jeffrey stated that dorm access is restricted to the following hours: 11:30 AM–12:15 PM; 3:30 PM–5:00 PM; 8:45 PM–7:00 AM.

5. "Unit E is an unlocked unit for patients who have been transferred from other HSH units. The goal of this unit is to prepare patients for reintegration into the community." Defendants' Opposition, Exh. I.

6. Elijah Pious testified that he was allowed access to his dorm room during off-hours to ac-

commodate his sleep disorder. Charles Jeffrey testified that because of his skin condition, he had special permission to access the dorms for additional showers during the day.

7. Dr. Steven Kemble testified that a milieu stressing personal responsibility is therapeutically good for patients that are ready for it. The milieu includes the structure of the environment, patient involvement in his surroundings, and issues of support, validation, and containment. The Government established the fact that Dr. Kemble had not interviewed Plaintiffs or reviewed their charts to determine the role of the milieu in their particular treatment plans. Thus while the court recognizes that the milieu is important to treatment, there is no compelling evidence that the milieu in Unit E has hindered Plaintiffs' progress toward their goal of release.

uenue Program. In fact, it is clear that the law discourages courts from micromanaging state institutions, especially where there does not appear to be a substantial departure from professional judgment. The court finds no basis for judicial intervention here or for Plaintiffs' due process claim; accordingly, the court concludes that Plaintiffs are unlikely to prevail on the merits of their due process arguments.

### B. *Violations of Stipulation and Order in Civ No 91–00137*

■ Plaintiffs next contend that their right to individualized treatment has been previously established by this court through the January 19, 1995 Stipulation and Order to Remedy Defendants' Contempt of Settlement Agreement entered in Civ. No. 91–00137 DAE ("Stipulation"). Plaintiffs argue that the closing of the Anuenue Program violates Section V of the Stipulation insofar as the patients are being denied the opportunity to participate in a planned treatment program due to inadequate staff to conduct the program.

Defendants argue that Plaintiffs' reliance on the Stipulation is misplaced because (a) Plaintiffs do not have standing to enforce the Stipulation in Civ. No. 91–00137 DAE, and (b) Modification of the Anuenue Program and transferring residents to Unit E from the Cooke Building does not violate the terms of Stipulation. Defendants argue that Plaintiffs' needs are being met through the programs in place in Unit E, albeit not fulfilling all of Plaintiffs' desires.

Section V of the Stipulation provides:

A. By no later than July 17, 1995, Defendants shall develop and implement a plan for the provision of adequate psychological rehabilitation services at HSH.

B. Defendants shall ensure that patients are not denied the opportunity to participate in planned treatment programs due to

inadequate staff to transport patients to programs or to conduct the programs.

*United States v. State of Hawaii,* Civ. No. 91–00137 DAE (Stipulation dated Jan. 19, 1995). In addition, Section 5.B.2. states that "Discipline chiefs [will] [r]evise and implement psychological rehabilitation modules to meet patient needs and a mix of patients." *Id.*

While it is clear from the Stipulation that HSH has been ordered to develop plans and provide a certain level of care for HSH patients, it is not clear the closing or modifying the Anuenue Program violated this order.[8] Here the Anuenue Program was not moved from the Cooke Building due to inadequate staffing, but rather due to substandard and unsafe conditions of the Cooke Building. Furthermore, as the programs conducted by Unit E appear to adequately accommodate the needs of the patients, the court finds that Plaintiffs have not been denied the "opportunity to participate in planned treatment programs." *See* Stipulation, Section V. A reduction in the level of freedom previously enjoyed in the Anuenue Program does not violate the minimum standards set forth in the Stipulation. Therefore, the court finds that Plaintiff is not likely to prevail on the merits of its arguments based on the Stipulation.

### C. *Americans With Disabilities Act*

■ Plaintiffs also argue that they have a right under the Americans with Disabilities Act ("ADA") to treatment appropriate to their individual needs. In support of their argument, Plaintiffs point to the implementing regulations of the ADA which provide that "a public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individual with disabilities." 28 C.F.R. § 35.130(d). A qualified individual with a disability under the regulations is "an

---

8. Under established contract principles, "nonparties as intended third-party beneficiaries, may enforce a [settlement] agreement." *Hook v. State of Arizona Dept. of Corrections,* 972 F.2d 1012, 1014 (9th Cir.1992); Fed.R.Civ.P. 71 ("when an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if

a party"). *But see, Rafferty v. NYNEX Corp.,* 60 F.3d 844, 849 (D.C.Cir.1995) (unless consent decree stipulates that it may be enforced by third-party beneficiary, only parties to the decree can seek enforcement of it). Following established contract principles and Ninth Circuit precedent, the court will assume standing for the purposes of this motion.

individual with a disability who.... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 28 C.F.R. § 35.104.

Defendants argue that ADA is not applicable here because Plaintiffs fail to establish a claim under Title II of the ADA. Defendants maintain that Plaintiffs fail to show that they are excluded from any services or activities by reason of their disability. *See* 42 U.S.C. § 12132. Moreover, Defendants argue, the commentary to the regulations provision, that Plaintiffs cite, states that section 35.130(d) applies to facilitate the interaction of qualified individuals with nondisabled persons to the fullest extent possible. 28 C.F.R. 35.130, App. A, at 442.

■ To establish a violation of Title II of the ADA, Plaintiffs must show:

(1) that he is a qualified individual with a disability;

(2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and

(3) that such exclusion, denial of benefits, or discrimination was *by reason of the plaintiff's disability.*

*Tyler v. City of Manhattan,* 857 F.Supp. 800, 817 (D.Kan.1994) (emphasis added). Plaintiffs carry the burden of proof on their claim that they have been discriminated against on the basis of their disability. *Id.*

Here, assuming that Plaintiffs somehow demonstrated that they are qualified individuals under the ADA, Plaintiffs do not allege discrimination based on their mental illness. Instead, Plaintiffs' arguments insinuate that they are not being sufficiently credited for the progress they have made in overcoming their illness. As such, the Plaintiffs fail to carry their burden of proof in showing that they were discriminated against on the basis of their "disability."

Moreover, Appendix A of the 28 C.F.R. 35.310 confirms the inapplicability of the

ADA to the instant case. *See, i.e.,* 28 C.F.R. 35.130, App. A, at 461 (most integrated setting appropriate refers to settings that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible). Accordingly, the court finds that Plaintiffs are not likely to prevail on their ADA-based claim.

### D. *Hawaii State Statutes, Rules, and Policies*

■ Finally, Plaintiffs contend that their transfer from Cooke to Unit E violated their rights under Haw.Rev.Stat. § 334E–2(a)(7) & (8), HSH Policies and Procedures ("P & P") 04.527.000, 04.270.000, and numerous cited Hawaii Administrative Rules.

Defendants rely on *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) to argue that the Eleventh Amendment bars these claims; they contend that it would violate the principles of federalism to have a federal court instruct state officials on how to conform with state law. Defendants further contend that the Plaintiffs' allegations do not implicate either an atypical or significant deprivation sufficient to overcome the federalism hurdle. *See Sandin v. Conner,* —— U.S. ——, ——, 115 S.Ct. 2293, 2301, 132 L.Ed.2d 418 (1995).

The Eleventh Amendment reads:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[9]

The Supreme Court has interpreted this Amendment to signify that "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed[.]" *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Where state officials are the named defendants, the Eleventh Amendment bars the suit if " 'the state is the real, substantial

---

**9.** The Supreme Court has held that this provision bars suits against a State brought by its own citizens, as well as by foreign citizens. *Papasan*

*v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986).

party in interest.'" *Pennhurst,* 465 U.S. at 101, 104 S.Ct. at 908 (citing *Ford Motor Co. v. Dept. of Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)). "Thus, '[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.'" *Id.* (citing *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1052, 10 L.Ed.2d 191 (1963)).

 Moreover, a plaintiff may not sue a state in either law or equity. *Id.,* 465 U.S. at 100–01, 104 S.Ct. at 908–09 (citing *Missouri v. Fiske,* 290 U.S. 18, 27, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933) ("the Amendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when those are asserted and prosecuted by an individual against a State")). Reading these two principles together, a suit against a state official that is in fact a suit against a State is barred regardless of whether the plaintiff seeks monetary or injunctive relief. *Id.,* 465 U.S. at 101–02, 104 S.Ct. at 908–09 (citing *Cory v. White,* 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982)).

 The Supreme Court has recognized an exception to this general rule: a plaintiff may challenge the constitutionality of a state official's action by seeking prospective injunctive relief. *Id.,* 465 U.S. at 102, 104 S.Ct. at 909 (citing *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). If the plaintiff asks the federal court to enjoin the official's future unconstitutional conduct, the Eleventh Amendment presents no bar, because unconstitutional actions by state officials cannot be authorized by a state. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, a plaintiff may not seek retroactive monetary relief against the state official for past allegedly unconstitutional behavior. *Id.* at 666–67, 94 S.Ct. at 1357–58.

Simply asking for injunctive relief and not damages will not automatically allow the plaintiff to overcome the dictates of the Eleventh Amendment. The Supreme Court has recognized that the difference between retrospective and prospective relief "will not in many instances be that between day and night." *Papasan,* 478 U.S. at 278, 106 S.Ct. at 2940 (citing *Edelman,* 415 U.S. at 667, 94 S.Ct. at 1357). Generally, "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred [by the Eleventh Amendment]." *Papasan,* 478 U.S. at 278, 106 S.Ct. at 2940.

Turning to the suit before it, this court finds that Plaintiffs' claims against Defendants in their official capacities are in fact claims against the State of Hawaii. Hence, any liability attributed to them will bind the State, and the State will bear the consequences of judgment. The State is, therefore, the "real, substantial party in interest[,]" *Pennhurst,* 465 U.S. at 101, 104 S.Ct. at 908. Plaintiffs' claims against the State of Hawaii are directly barred under this doctrine. *Papasan,* 478 U.S. at 276, 106 S.Ct. at 2939. Accordingly, the suit will be barred unless (1) the State of Hawaii has unequivocally waived its Eleventh Amendment immunity, or (2) Plaintiffs seek prospective injunctive relief.

 Because there is no unequivocal indication that Hawaii has consented to this suit in federal court, Plaintiffs may only sue the State if the claims fall within the prospective injunction exception enumerated in *Ex parte Young.* 209 U.S. 123, 28 S.Ct. 441. In order to have standing to obtain prospective injunctive relief, a plaintiff must show some substantial likelihood that the past challenged official conduct will recur in the future. *Nelsen v. King County,* 895 F.2d 1248, 1250 (1990); *City of Los Angeles v. Lyons,* 461 U.S. 95, 108, 103 S.Ct. 1660, 1668, 75 L.Ed.2d 675 (1983) (reasonable showing of a sufficient likelihood that plaintiff will be injured again). Plaintiff must demonstrate a "credible threat" that he will be subject to a specific injury for which he seeks injunctive or declaratory relief. *Sample v. Johnson,* 771 F.2d 1335, 1340 (9th Cir.1985), *cert. denied,* 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986). "The 'mere physical or theoretical possibility' of a challenged action again affecting plaintiff is not sufficient." *Id.* (citing *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982)).

Here, the Complaint stems from the closing of the Cooke Building due to unsafe conditions and the resulting transfer of Plaintiffs to Unit E. The transfer here does not appear to have violated Plaintiffs' rights,[10] and in any event, another transfer of the patients does not appear imminent. Plaintiffs do not appear to state a legally cognizable claim for prospective injunctive relief and are not otherwise likely to prevail on the merits of their state law claims.

## II. Possibility of Irreparable Harm

Here, both parties have demonstrated substantial interests in support of their positions. Plaintiffs allege that the Defendants' actions put them at risk of regressing in their treatment. They also express concern that the move to more restrictive program rules and conditions will reflect negatively on any future application by a plaintiff for conditional release to community living. Finally, they voice discomfort with the new program and allege symptoms of emotional distress.

In the counterbalance, the court recognizes the State's vital interest in exercising its professional judgment in the care and treatment of psychiatric patients, in managing its own institutions, and in autonomy from federal regulation. Plaintiffs' alternatives could require extensive investment in building renovation[11] and may result in duplication of existing services,[12] at the expense of other hospital programs and patients. While the public has an interest in suitable hospital care, treatment, and rehabilitation of mentally ill persons, see Haw.Rev.Stat. § 334–31, those interests are generally better served by judicial deference to the judgment exercised by qualified professionals. The court finds the move to Unit E consistent with professional judgment.

Thus, after carefully reviewing the facts presented and the parties' arguments, the court finds that the balance of harm tips decidedly in favor of Defendants. Accordingly, the court DENIES Plaintiffs' Motion for a Preliminary Injunction.

## CONCLUSION

For the reasons stated above, the court DENIES Plaintiffs' Motion for Preliminary Injunction.

IT IS SO ORDERED.

---

10. Reviewing the state statutes, administrative law and HSH policy and procedures in light of the facts in this case, the court is not convinced that Defendants violated any of the cited provisions. Plaintiffs' reliance on broad-based rules and regulations such as privacy rights under H.A.R. § 11–175–40 and Haw.Rev.Stat. § 334E–2, and the right to appropriate treatment under H.A.R. § 11–175–11 is misplaced because the above enumerated rights do not give Plaintiffs an unequivocal right to participate in the Anuenue Program or to reside in the Cooke Building. The statutes and regulations establish a minimum level of care, and Plaintiffs have failed to demonstrate a violation of that level of care. Plaintiffs fail to show that their current accommodations in Unit E has deprived them of their dignity, privacy, or proper treatment.

11. The estimates for bringing the Cooke Building in compliance with fire, life, and safety standards include: $184,526 for a fire protection system, $200,000–$400,000 for asbestos containment and removal, and an annual waiver from the hospital licensing branch of the Department of Health to operate Cooke as a patient residence for more than ten patients due to the size of patient rooms. See Defendants' Opposition, Decl. of William Elliot, at ¶¶ 6, 8, 10.

12. "Changes in the Hospital's structure and treatment provision, while still undergoing development and improvement, have increased in quality and quantity to the degree that a separate unit-based program for patients appropriate to Anuenue Program is no longer necessary, and would duplicate services already provided at HSH." See Decl. of Patricia A. Thielen, attached to Defendants' Opposition, ¶ 30.